DONNA ROBERTSON, Plaintiff v. CHARLES RONALD ROBERTSON, Defendant

No. COA03-1372

(Filed 21 December 2004)

1. **Divorce— equitable distribution—payment of distributive award—finding of sufficient liquid assets required**

The trial court erred in an equitable distribution case by ordering defendant to pay a distributive award of $52,100.07 without finding that he had sufficient liquid assets with which to pay the award, because: (1) although the trial court found defendant could liquidate his assets to pay the award, the only liquid assets readily available to pay the award were two bank accounts totaling $5,929.38; (2) although defendant may in fact be able to pay the distributive award, defendant's evidence is sufficient to raise the question of whether adjusting the award from defendant to plaintiff is necessary to offset any adverse financial consequences of using the non-liquid assets; and (3) the trial court's finding that defendant earned $93,000 was insufficient under

ROBERTSON v. ROBERTSON

[167 N.C. App. 567 (2004)]

N.C.G.S. § 50-20(c)(1) absent consideration of the evidence of defendant's liabilities.

**2. Divorce— equitable distribution—valuation—application of coverture fraction—marital portion of pension plan**

The trial court did not err in an equitable distribution case by applying a coverture fraction to determine the marital portion of defendant's defined contribution pension plan because: (1) nothing in N.C.G.S. § 50-20.1 or 20.1(d) indicates that the coverture fraction is to be applied only to defined benefit pension plans; and (2) the plain language of N.C.G.S. § 50-20.1(d) requires application of a coverture fraction to determine the marital portion of all vested and novested pension, retirement, or deferred compensation benefits.

**3. Divorce— equitable distribution—valuation—pension plan—number of years of participation**

The trial court's determination in an equitable distribution case that defendant had participated in his pension plan for thirteen years prior to the date of separation was supported by competent evidence.

**4. Divorce— equitable distribution—divisible property— postseparation diminution in fair market value of marital home**

The trial court erred in an equitable distribution case by concluding that a $7,000 postseparation diminution in the fair market value of the marital home was not divisible property, because: (1) competent evidence supported the trial court's finding that both parties contributed to the diminution in value, and a diminution in value is not divisible property when caused by only one party after the date of separation; and (2) the exception clause of N.C.G.S. § 50-20(b)(4)a does not apply under these facts.

Appeal by defendant from judgment entered 6 May 2003 by Judge Lawrence Dale Graham in Davie County District Court. Heard in the Court of Appeals 26 August 2004.

*No brief filed for plaintiff-appellee.*

*Elliot Pishko Morgan, P.A., by David C. Pishko, for defendant-appellant.*

**ROBERTSON v. ROBERTSON**

[167 N.C. App. 567 (2004)]

CALABRIA, Judge.

Charles Ronald Robertson ("defendant") appeals an equitable distribution judgment providing for an equal division of marital assets and ordering him to pay a distributive award to Donna Robertson ("plaintiff"). We reverse in part and remand.

The parties were married 3 June 1995, separated 11 June 2001, and divorced 4 November 2002. From 1978 until the date of separation, defendant was employed as a sales manager for Performance Specialties, Inc., ("PSI") formerly known as Bob Robertson, Inc. ("BRI").

The trial court valued the marital estate at $158,630.61 as of the date of separation. The principal assets in the marital estate included defendant's PSI vested pension plan, also referred to as a profit-sharing plan, valued at $95,763.35 and defendant's stock in PSI valued at $37,336.00, both .of which were distributed to defendant. The trial court arrived at the marital value of the PSI pension plan by applying a coverture fraction of six/thirteenths to the plan's $207,487.28 date of trial value. The trial court also distributed to defendant two bank accounts totaling $5,929.38, an automobile and other personal property valued at $13,829.68, an unencumbered one-half acre lot adjacent to the marital home valued at $8,920.00, and the marital home valued at -23,387.82. The trial court determined the marital home's value by subtracting the payoff of the two mortgages on the property as of the date of separation, $125,930.84 and $23,456.98 respectively, from its $126,000.00 fair market value as of the date of separation. Accordingly, the net assets distributed to defendant totaled $138,390.59. Plaintiff's net assets totaled $20,240.02.

The trial court determined that an equal division of the marital assets was equitable. Accordingly, each party was entitled to one-half the value of the marital estate, $79,315.30. However, the trial court found an in-kind distribution was not equitable because the largest assets of the estate were the PSI pension plan and the PSI stock. The trial court ordered defendant to pay plaintiff a distributive award of $52,100.07 within ninety days of the date of the judgment. In requiring the distributive award, the trial court considered defendant's income at PSI, which was approximately $93,000.00, plus defendant's PSI pension and stock as well as the real and personal property including the bank accounts. Defendant appeals.

I. Finding of Sufficient Liquid Assets

**[1]** Defendant first asserts the trial court erred by ordering him to pay the distributive award without finding that he had sufficient liquid assets with which to pay the award. We agree.

"The division of marital property is a matter within the sound discretion of the trial court[,] . . . and [the trial court's ruling] will be disturbed only if it is 'so arbitrary that [it] could not have been the result of a reasoned decision.' " *Gagnon v. Gagnon*, 149 N.C. App. 194, 197, 560 S.E.2d 229, 231 (2002) (quoting *Lawing v. Lawing*, 81 N.C. App. 159, 162, 344 S.E.2d 100, 104 (1986)). Nevertheless, under N.C. Gen. Stat. § 50-20(c) (2003), the trial court must consider certain factors and "must make findings as to each factor for which evidence was presented." *Rosario v. Rosario*, 139 N.C. App. 258, 261, 533 S.E.2d 274, 276 (2000).

The pertinent factors under N.C. Gen. Stat. § 50-20(c) require that the trial court consider:

(1) The income, property, and liabilities of each party at the time the division of property is to become effective.

. . . .

(9) The liquid or nonliquid character of all marital property and divisible property.

. . . .

(11) The tax consequences to each party.

With respect to N.C. Gen. Stat. § 50-20(c)(9) and (11), where defendant is required "to pay the distributive award from a non-liquid asset or by obtaining a loan, the equitable distribution award must be recalculated to take into account any adverse financial ramifications such as adverse tax consequences." *Embler v. Embler*, 159 N.C. App. 186, 188-89, 582 S.E.2d 628, 630 (2003). Under N.C. Gen. Stat. § 50-20(c)(1), "the court is required to consider the liabilities of each party when making an equitable distribution." *Geer v. Geer*, 84 N.C. App. 471, 475, 353 S.E.2d 427, 429 (1987).

The trial court made the following findings of fact pertinent to the distributional award:

28. . . . . The presumption of an in-kind distribution is further rebutted because the pension plan is the single largest,

unencumbered asset of the marriage but is difficult to liqui-
date and may cause unfavorable tax consequences. The fact
that the stock of PSI, a closely held corporation with
Defendant's father as the controlling stockholder, is another
major marital asset makes an in-kind division very difficult
and not equitable.

. . . .

30. The Court considered the following in making a distributional
award from Defendant to Plaintiff as set forth hereinafter:

(a) Defendant is being awarded numerous assets in the form
of PSI stock, an unencumbered real estate lot, and
assorted personal property and bank accounts that he
can liquidate, if necessary, to make a distributional
award.

. . . .

(e) Defendant has an annual income from his employment of
at least $93,000.00 as well as an annual profit sharing con-
tribution made solely by his employer.

Although the trial court found defendant could liquidate the
above assets to pay the $52,100.07 distributive award, the only liquid
assets readily available to pay the award were two bank accounts
totaling $5,929.38. Defendant's other assets included stock in PSI val-
ued at $37,336.00, the unencumbered one-half acre lot valued at
$8,920.00, and the personal property valued at $13,829.68. With the
exception of the pension plan, which the trial court found would be
"difficult to liquidate and [might] cause unfavorable tax conse-
quences," the trial court failed to make findings concerning the diffi-
culty and possible financial and tax consequences of borrowing
money against or liquidating the PSI stock, the one-half acre lot, and
the personal property in order to pay the amount of the judgment lien
within ninety days. Accordingly, "[a]lthough defendant may in fact be
able to pay the distributive award, defendant's evidence is sufficient
to raise the question of . . . [whether] adjust[ing] the award from
defendant to plaintiff [is necessary] to offset any adverse financial
consequences of using the non-liquid assets." *Embler*, 159 N.C. App.
at 188-89, 582 S.E.2d at 630-31. Furthermore, the trial court's finding
that defendant earned $93,000.00 was insufficient under N.C. Gen.
Stat. § 50-20(c)(1) absent consideration of the evidence of defend-
ant's liabilities.

II. Application of a Coverture Fraction

[2] Defendant asserts the trial court erred in applying a coverture fraction to determine the marital portion of his PSI pension plan. Specifically, defendant notes that the only appellate decisions discussing the use of a coverture fraction involve defined benefit pension plans, which are more complicated to value than defendant's type of plan, a defined contribution pension plan. Defendant proceeds to argue that because valuation of a defined contribution plan is easier, use of a coverture fraction is not appropriate. We disagree.

North Carolina General Statute § 50-20.1 (2003) provides the process for "[t]he award of vested [and nonvested] pension, retirement, or other deferred compensation benefits . . . ." N.C. Gen. Stat. § 50-20.1(a), (b). Under N.C. Gen. Stat. § 50-20.1(d) (2003),

> The award shall be determined using the proportion of time the marriage existed (up to the date of separation of the parties), simultaneously with the employment which earned the vested and nonvested pension, retirement, or deferred compensation benefit, to the total amount of time of employment. . . .

The numerator of this fraction, termed a coverture fraction, "represents the total number of years of marriage, up to the date of separation, which occurred 'simultaneously with the employment which earned the vested [and nonvested] pension.' The denominator represents the total years of employment during which the pension accrued." *Bishop v. Bishop*, 113 N.C. App. 725, 729-30, 440 S.E.2d 591, 595 (1994) (citation omitted).

Nothing in N.C. Gen. Stat. § 50-20.1 or 20.1(d) indicates that the coverture fraction is to be applied only to defined benefit pension plans. Rather, the plain language of N.C. Gen. Stat. § 50-20.1(d) requires application of a coverture fraction to determine the marital portion of all "vested and nonvested pension, retirement, or deferred compensation benefit[s]." Accordingly, the trial court did not err by applying a coverture fraction to defendant's pension plan.

III. The Denominator of the Coverture Fraction

[3] Defendant asserts competent evidence did not support the trial court's finding that he participated in the pension plan for thirteen years. Specifically, defendant argues his pension plan extends back to the beginning of his employment with BRI in 1978. In the alternative,

ROBERTSON v. ROBERTSON

[167 N.C. App. 567 (2004)]

defendant contends his participation in the PSI pension plan started nine years prior to his marriage. Where an appellant challenges the trial court's findings of fact, our review is limited to "whether the trial court's findings of fact are supported by any competent evidence, regardless of the existence of evidence which may support a contrary finding." *Stewart v. Stewart*, 141 N.C. App. 236, 247, 541 S.E.2d 209, 217 (2000).

In pertinent part, the trial court's findings of fact state:

9. . . . . The Court finds that [defendant] was employed by [PSI] for a period of 13 years from 1988 to the date of separation in June, 2001. . . .

. . . .

12. The Court finds, based on the evidence presented, that PSI was incorporated in 1988 and was a business started by Defendant's father and formerly known as [BRI]. Defendant came to work for [BRI] in 1978 and was working there when the company merged into PSI in 1988. The Court finds by the greater weight of the evidence that all the contributions made to Defendant's profit sharing plan were made while he was employed at PSI beginning in 1988.

Defendant testified that contributions to his pension plan started nine years prior to his marriage when PSI was formed, which according to him was in 1987. Defendant's father testified that contributions for defendant under the BRI pension plan started in 1978 and continued after PSI was formed. When asked, defendant's father first testified PSI was formed about 1988 or 1989 then later believed it was formed around 1987 or 1988.

With regard to when contributions started, defendant's testimony constitutes competent evidence that his pension plan started when PSI was formed. Furthermore, although defendant's father was somewhat imprecise when testifying about the formation date of PSI, his father's two references to 1988 constituted competent evidence that PSI was formed in 1988. Moreover, we note defendant's contention that his pension plan started with PSI's formation nine years before his marriage, meaning in 1986, conflicts with his testimony that PSI's formation occurred in 1987. Accordingly, the trial court's finding that defendant had participated in the pension plan for thirteen years prior to the date of separation was supported by competent evidence.

IV. The Marital Home

**[4]** Defendant asserts the trial court erred in concluding that a $7,000.00 post-separation diminution in the fair market value of the marital home was not divisible property. It is well established that a trial court's conclusions of law must be supported by its findings of fact. *Patton v. Patton*, 318 N.C. 404, 406, 348 S.E.2d 593, 595 (1986). Under N.C. Gen. Stat. § 50-20(b)(4),

> "Divisible property" means all real and personal property as set forth below:
>
> a. All appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution, except that appreciation or diminution in value which is the result of postseparation actions or activities of a spouse shall not be treated as divisible property.

Therefore, "under the plain language of N.C. Gen. Stat. § 50-20(b)(4)a, appreciation [and diminution in value] that results from the activities or actions of *one spouse* is not treated as divisible property." *Hay v. Hay*, 148 N.C. App. 649, 655, 559 S.E.2d 268, 272 (2002) (emphasis added).

In pertinent part, the trial court's findings and conclusion with respect to the diminution in value of the marital home state:

> Defendant presented expert testimony that the marital residence had depreciated in value from $126,000.00 at the time of separation to $119,000.00 when it was appraised in October 2002. Defendant contends this decrease of $7000.00 is divisible property. . . . The Court finds that any decrease in value occurred as a direct result of the lack of maintenance done on the property after the date of separation. *Both parties'* actions and inactions contributed to this lack of maintenance and, as a result, any decrease in value is not divisible property and is assigned no value.

Competent evidence supports the trial court's finding that *both parties* contributed to the diminution in value. However, this finding does not support the trial court's conclusion that the decrease in value is not divisible property. As discussed above, a diminution in value is not divisible property when caused by *one party* after the date of separation. However, here we are faced with a diminution

caused by *both parties* after the date of separation. Therefore, the exception clause of N.C. Gen. Stat. § 50-20(b)(4)a does not apply under these facts, and the parties must share the consequent diminution in value occasioned by their joint "actions and inactions."

For the foregoing reasons, we reverse in part and remand the judgment to the trial court for: (1) additional findings of fact regarding whether an adjustment is needed to offset any adverse financial consequences to defendant for liquidating assets to pay the distributive award and defendant's liabilities as compared to his income and property and (2) a valuation of the marital home's diminution in value and the distribution of that diminution between the parties. "On remand, the trial court shall rely upon the existing record, but may in its sole discretion receive such further evidence and further argument from the parties as it deems necessary and appropriate to comply with the instant opinion." *Heath v. Heath,* 132 N.C. App. 36, 38, 509 S.E.2d 804, 805 (1999).

Reversed in part and remanded.

Judges ELMORE and STEELMAN concur.