ANN N. SQUIRES, Plaintiff v. J. RALPH SQUIRES, Defendant

No. COA05-938

(Filed 5 July 2006)

## 1. Divorce— postseparation support findings—incorporation of tax return

A trial court order for postseparation support was supported by a finding that incorporated by reference defendant's income numbers from his tax return.

## 2. Divorce— postseparation support findings—incorporation of financial standing affidavit

Postseparation support involves a relatively brief examination of the parties' needs and assets and the court may base its award on a verified pleading, affidavit, or other competent evidence. The trial court here made an appropriate finding supported by the evidence by incorporating by reference defendant's financial standing affidavit.

## 3. Divorce— equitable distribution—real estate development company—appraisal

An appraisal of defendant's real estate company was properly admitted in an equitable distribution action.

## 4. Divorce— equitable distribution—past and future tax losses—testimony from accountants—not speculative

Findings in a divorce and equitable distribution action concerning defendant's net operating loss deductions for future and past tax years, and for capital gains eliminated using the loss carrybacks, were supported by testimony from defendant's accountants and were not speculative.

## 5. Divorce— equitable distribution—decreased value of company—defendant's role

Findings in a divorce and equitable distribution action that a decrease in the value of defendant's real estate development

SQUIRES v. SQUIRES

[178 N.C. App. 251 (2006)]

business was attributable to the actions of defendant were not erroneous. Although defendant's son had become president of the company and defendant limited his role, other findings indicate that defendant continued to play an important role in the company.

### 6. Divorce— equitable distribution—assets existing at separation but not at trial—proceeds from liquidation—findings

The trial court did not err in an divorce and equitable distribution action by finding that defendant had received the proceeds from the sale of several assets and distributions. Although defendant asserted that these assets no longer existed at the time of trial and had gone to preserve defendant's company and support the parties, the assets existed at the date of separation and the proceeds were used to pay for spending and loans incurred by defendant after the separation.

### 7. Divorce— equitable distribution—distribution of assets—business and automobile

There was no error in a divorce and equitable distribution action where defendant contended that the court found the distribution of an asset to be divisible, but in fact the finding determined that the asset was defendant's separate property. Furthermore, the court properly classified a car leased by defendant but driven by plaintiff as marital and distributed it to plaintiff at the value agreed to by both parties ($0).

### 8. Divorce— equitable distribution—valuation of country club membership—opinion of plaintiff

The trial court did not err in a divorce and equitable distribution action in valuing a country club membership. The subjective opinions of the owner of property as to its value are admissible and competent.

### 9. Divorce— equitable distribution—marital home—debts and tax payments

The trial court did not err in its findings concerning the marital home in a divorce and equitable distribution action. Defendant failed to present any evidence of principal reduction, the payments made were ordered as part of defendant's support of his dependent spouse, and defendant did not introduce

evidence to support the contention that he should have had a credit for paying plaintiff's tax liability, which was a lien on the marital home.

**10. Divorce— equitable distribution—distribution of stock— capital gains**

The trial court did not err in a divorce and equitable distribution action by distributing stock to plaintiff without taking into account defendant's capital gains liability. Defendant's accountant testified that defendant would have no tax after consideration of other losses.

**11. Divorce— equitable distribution—company controlled by defendant—payment of debts**

There was no abuse of discretion in an equitable distribution action in requiring defendant to pay the debt and tax liability which accrued to a company during the time after separation in which he had sole control of the company.

**12. Divorce— equitable distribution—marital debts—found but not listed**

The trial court erred in a divorce and equitable distribution action by finding certain debts to be marital but not listing them in Table A. Although remand was for other reasons, correction was ordered.

**13. Divorce— equitable distribution—wife's inheritance—use to purchase husband's business**

The trial court did not err in an equitable distribution action by finding that the wife's inheritance was used for the acquisition of the husband's business.

**14. Divorce— equitable distribution—assets liquidated and found to be distributed—postseparation conversion of those assets—distribution factor**

The trial court did not err in an equitable distribution action by finding that proceeds from the sale of an asset and the liquidation of an IRA were distributed to defendant and then considering defendant's postseparation conversion of those assets as a distributional factor.

**15. Divorce— equitable distribution—ability to earn—finding supported by tax returns**

The trial court did not err by finding that defendant had the ability to earn large sums where his tax returns and financial statement supported that finding.

**16. Divorce— equitable distribution—distributional factor— eligibility for social security benefits**

The trial court did not err in an equitable distribution action by finding as a distributional factor that defendant will be entitled to receive social security benefits and that plaintiff will not. Plaintiff produced defendant's W-2 statement, showing social security withholding, and neither party produced evidence that plaintiff was entitled to social security benefits.

**17. Divorce— equitable distribution—distributional factors— findings**

The trial court in an equitable distribution action made the required findings about distributional factors.

**18. Divorce— alimony—monthly income of real estate developer—evidence supporting findings**

The evidence supported findings in an alimony order about defendant's continued monthly income. Defendant, a real estate developer, had income plus a complex and constant turnover of properties; although he alleged that some assets were included twice, the evidence supports the court's findings.

**19. Divorce— alimony—findings about duration**

An alimony order was remanded for further findings concerning the reason for the duration of alimony payments. Findings that plaintiff had no income after thirty-eight years of marriage were not sufficient.

**20. Divorce— alimony—tax rate—findings**

A finding in an alimony order about defendant's tax rate was supported by the evidence.

**21. Divorce— alimony—findings**

The trial court made sufficient findings in an alimony order about defendant's age, past health concerns, and gross and after-tax income as required by N.C.G.S. § 50-16.3A(b).

SQUIRES v. SQUIRES

[178 N.C. App. 251 (2006)]

**22. Divorce— alimony—order not binding on heirs**

A finding that an alimony order would be binding on defendant's heirs was erroneous and without effect, as such a term is barred by N.C.G.S. § 50-16.9(b).

**23. Divorce— alimony—attorney fees**

The findings of fact in an alimony action were sufficient for the award of attorney fees.

**24. Divorce— equitable distribution—distributive award—findings—sufficiency of assets**

A distributive award in an equitable distribution action was remanded for additional findings on whether defendant had sufficient liquid assets to pay the award.

Appeal by defendant from orders entered 12 March 2004 and 1 September 2004 by Judge Regan A. Miller, an order entered 11 April 2003 by Judge Catherine C. Stevens, and an order entered 7 April 2004 by Judge Lisa C. Bell in the District Court in Mecklenburg County. Heard in the Court of Appeals 22 February 2006.

*Davis & Harwell, P.A., by Joslin Davis, Loretta C. Biggs and Mark Hoppe, for plaintiff-appellee.*

*Justice, Eve & Edwards, P.A., by R. Michael Eve, Jr., for defendant-appellant.*

HUDSON, Judge.

On 9 January 2003, plaintiff Ann N. Squires filed a complaint seeking *inter alia*, postseparation support, alimony and equitable distribution of marital property. Following a hearing on 18-19 March 2003, the court entered an order for postseparation support and requiring that sales proceeds from a marital asset be held in a joint account until further order. After a hearing on 27-28 April and 3-6 May 2004, the court entered an equitable distribution and alimony judgment and order on 1 September 2004, which the court revised *sua sponte* on 30 March and 3 June 2005. Defendant J. Ralph Squires appeals. As discussed below, we affirm in part, reverse in part, vacate in part, and remand.

The evidence tended to show the following: The parties married on 17 April 1965, separated on 26 December 2000, and were divorced 5 June 2003. At the time of trial, defendant was 64 years old and

claimed that he had several health problems, though no medical testimony was introduced in support of this contention. Plaintiff was 58 years old and in good health. During the marriage, she was primarily a homemaker. Defendant was in the construction business until 1987 when he sold his company for approximately $7 million. Defendant used the proceeds of the sale to begin a real estate development business, Squires Enterprises, Inc., ("SEI"). Prior to 2000, SEI purchased undeveloped lots, obtained loans to finance the purchase and initial development of the land, and contracted with construction companies for the purchase of developed residential lots. During the marriage, defendant earned income primarily through capital gains and distributions from various ·investments, partnerships and S-corporations. In the years 1999 through 2001, defendant's income ranged from $627,540 to $1,042,475. Defendant's 2002 tax return showed an income of $1,933,013. In the equitable distribution and alimony judgment, the court awarded defendant 58 percent of the net marital and divisible estate, or $4,545,769, and awarded plaintiff 42 percent, or $3,332,330.

The standard of review of the percentage division of marital property in equitable distribution cases is for an abuse of discretion. *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

> It is well established that where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion. A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.

*Id.* Further, "[i]t is well established that a trial court's conclusions of law must be supported by its findings of fact." *Robertson v. Robertson*, 167 N.C. App. 567, 574, 605 S.E.2d 667, 671 (2004).

**[1]** Defendant first argues that the trial court's findings do not support its order for postseparation support. We do not agree.

Defendant contends that the court erred in failing to find that he had a present employment income or other recurring earnings. Courts are to base their postseparation support awards

> on the financial needs of the parties, considering the parties' accustomed standard of living, *the present employment income*

*and other recurring earnings of each party from any source,*
their income-earning abilities, the separate and marital debt serv-
ice obligations, those expenses reasonably necessary to support
each of the parties, and each party's respective legal obligations
to support any other persons.

N.C. Gen. Stat. § 50-16.2A(b) (2005) (emphasis supplied). Here, evi-
dence from defendant's tax returns showed that, while his W-2
income decreased from $106,100 to zero from 1999 through 2001, his
income from interest, dividends, capital gains and partnerships was
fairly consistent and averaged $622,136 per year, or $51,845 monthly,
during those years. The court, in finding 15, incorporated by refer-
ence the income numbers from defendant's tax return. This finding
supports the court's order for postseparation support.

[2] Defendant also contends that the court erred in failing to make
findings about defendant's expenses. Because postseparation support
involves a relatively brief examination of the parties' needs and
assets, "the court may base its award on a verified pleading, affidavit,
or other competent evidence." *Wells v. Wells,* 132 N.C. App. 401, 410,
512 S.E.2d 468, 474, *disc. review denied,* 350 N.C. 599, 537 S.E.2d 495
(1999) (quoting N.C. Gen. Stat. § 50-16.8). Finding 21 incorporates by
reference defendant's financial standing affidavit, which details
defendant's monthly expenses. This finding provides that "[a]fter con-
sidering [defendant's] reasonable and necessary living expenses,
[defendant] has sufficient income to pay the postseparation support
as hereinafter ordered." The court made an appropriate finding sup-
ported by the evidence about defendant's expenses. Defendant has
shown no abuse of discretion by the trial court.

[3] Defendant next argues that the trial court's distribution of marital
property is not equitable and not supported by competent evidence,
valid findings or proper conclusions. We disagree.

Defendant contends that the trial court erred in admitting into
evidence and adopting Kevin P. Walker's appraisal of SEI. The court
found that SEI had a fair market value of $2,331,000 on 26 December
2000 and of $1,712,000 as of 31 December 2003. "Absent a clear show-
ing of legal error in utilizing [an approach to valuation], this Court is
not inclined to second guess the expert and the trial court, which
accepted and approved this determination." *Sharp v. Sharp,* 116 N.C.
App. 513, 529, 449 S.E.2d 39, 47, *disc. review denied,* 338 N.C. 669,
453 S.E.2d 181 (1994). The same method was used for both valua-

tions, but defendant challenges only the 31 December 2003 valuation. We overrule this assignment of error.

[4] Defendant also contends that the court erred in making finding 14 that defendant individually would be entitled to specific net operating loss deductions applicable to future and past tax years because such a finding was speculative and hypothetical. The court found that SEI losses could be carried forward and backward to reduce defendant's 2002 and 2003 state and federal income taxes. The finding was supported by the testimony of one of defendant's experts and his accountant. Defendant also asserts that the trial court abused its discretion in findings 26 and 27 which concern capital gains which defendant could eliminate using the SEI loss carrybacks. Both of these findings are supported by testimony from defendant's accountants.

[5] Defendant next contends that the court erred in stating in finding 25 that the decrease in the value of SEI between the date of separation and 31 December 2003 was attributable to the actions of defendant. Defendant draws our attention to finding 10 which notes that in 2000, the parties' son Gil Squires became president of SEI and defendant "limited himself to arranging the financing for each project." Defendant asserts that this finding and others mentioning defendant's reliance on Gil Squires and his staff in making decisions regarding SEI indicate that the court abused its discretion in making finding 25 given its other findings. However, other findings indicate that defendant continued to play an important role at SEI and we see no abuse of discretion.

[6] Defendant also contends that the court erred in finding that defendant received all of the proceeds from the sale of Cheshire Joint Venture, Park Meridian Stock, his IRA and Dover Mortgage Corporation distributions. Defendant asserts that these assets no longer existed at the time of trial, and that the court should have credited him with using these assets to preserve SEI and support the parties. The assets in question existed at the date of separation and defendant controlled and liquidated them after the date of separation. Findings 72, 73, and 76 provide that the proceeds from the sale of the Regions stock and liquidation of defendant's IRA went to pay post-date of separation loans or for other spending by defendant. In the final pretrial order, the parties agreed that defendant had received over $600,000 in distributions from Dover after separation. Plaintiff testified that defendant used these funds for his own purposes without her knowledge. Finding 26 states that defendant loaned $250,000 to SEI after

SQUIRES v. SQUIRES

[178 N.C. App. 251 (2006)]

liquidating Cheshire and spending the remaining proceeds. No substantive evidence showed that any of the funds went to support plaintiff. The evidence supports these findings, and the court did not abuse its discretion. These arguments are without merit.

**[7]** Defendant also contends that the court erred in distributing OS Partners, LLC, to defendant at a value of $48,980. Defendant argues that the court found his interest in OC Partners to be divisible; however, finding 33 determines that this interest is defendant's separate property and Table A of the judgment does not list the interest as either marital or divisible.

Defendant contends that the court erred in awarding the Escalade automobile to plaintiff and assigning it no value. The Escalade was leased by defendant but driven exclusively by plaintiff. Both parties listed the lease value of the car as $0 on schedule E of the pretrial order. The trial court properly classified the lease as marital and distributed to plaintiff at the value agreed to by both parties. This assignment of error is without merit.

**[8]** Defendant also contends that the court erred in finding that the Old North State Country Club membership had a value on the date of separation of $10,000. Plaintiff valued the membership at $10,000, and "[t]he subjective opinions of the owner of property as to its value are admissible and competent." *Patterson v. Patterson*, 81 N.C. App. 255, 261, 343 S.E.2d 595, 600 (1986). We overrule this assignment of error.

**[9]** Defendant next contends that the court erred in distributing existing assets to plaintiff and requiring that defendant pay taxes and debts related to those assets. Defendant also asserts that amended finding 35, which assigned the equity in the marital home a value of $657,202 and assigning it to plaintiff, conflicts with finding 93, which states that the equity line on the marital home is a marital debt to "be distributed equally to the parties." Finding 93 also orders defendant to pay the monthly service on this debt until the home is sold, as required by the court's alimony order. Defendant contends that the court erred in failing to credit him with any principal reduction. We see no conflict in these findings, where defendant failed to present any evidence of principal reduction and where the payments are ordered as part of defendant's support of his dependant spouse.

> The appropriate treatment of post-separation payments made by one spouse toward marital debt will vary depending upon the facts of the particular case. . . . The trial court is in the best posi-

tion to determine the most equitable treatment of post-separation payments toward marital debt; therefore, the determination is left to the discretion of the trial court.

*Edwards v. Edwards*, 110 N.C. App. 1, 13, 428 S.E.2d 834, 840, *disc. review denied*, 335 N.C. 172, 436 S.E.2d 374 (1993). The court also required defendant to pay all of plaintiff's 2002 individual state income tax liability, which was a lien on the marital home, without giving him credit. Defendant claims that the liability resulted from the sale of assets which benefitted plaintiff, but he presented no evidence to quantify any tax burden.

[10] The court also distributed to plaintiff FNB Corp. stock worth $1,089,850, which was part of the consideration received for the sale of Dover. Defendant asserts that he will be required to pay capital gains on the stock, and that the court failed to give him credit for any tax liability. Defendant's accountant testified that he would have no tax after taking into account the SEI losses and again he failed to present evidence quantifying any tax burden.

[11] In finding 31, the court valued Little River Highway, LLC, shares at $110,000 at the date of separation and distributed them to plaintiff, but in the decretal portion of the judgment the court required that defendant pay "all debt and tax liability associated with this asset." Defendant contends that this requirement is inequitable and an abuse of discretion. Defendant had sole control over Little River Highway for two and one-half years after the date of separation. We conclude that there was no abuse of discretion in requiring defendant to pay for debt accruing during the time he had control of this asset.

[12] Defendant also contends that the court erred in the distribution of Regions Financial Corporation stock pledged to secure marital loans and in failing to list and consider as marital debts loans which were secured by the stock. The trial court found that $500,000 owed to Regions Bank was marital, but failed to list it in Table A. The parties agreed that a $75,000 debt to W.G. Squires and secured by a pledge of 6000 shares of Park Meridian was marital debt, and the court so found in finding 102. However, the court erred in failing to list this debt in Table A, as plaintiff conceded at oral argument. On remand which is necessary for other reasons, the trial court should make the necessary correction here.

[13] Defendant also contends that the court erred in its consideration of factors for an unequal distribution. Defendant asserts

that finding 108 that "[w]ife's separate inheritance was used for the acquisition of husband's business" was not supported by any evidence and should not have been given any weight in considering an unequal distribution. Plaintiff testified that these funds went into defendant's business although she admitted that she had not traced any separate funds into the business. Defendant could not recall whether such funds went into his business. The court's finding was not erroneous.

[14] Defendant also contends that the court erred in finding that proceeds from the sale of Cheshire and liquidation of defendant's IRA were distributed to defendant and also considered as a distributional factor against defendant. "Post-separation payments may . . . be treated as a distributional factor." *Khajanchi v. Khajanchi*, 140 N.C. App. 552, 564, 537 S.E.2d 845, 853 (2000). "A trial court may also give the payor a dollar for dollar credit in the division of the property, or require that the non-payor spouse reimburse the payor for an appropriate amount." *Hay v. Hay*, 148 N.C. App. 649, 655, 559 S.E.2d 268, 273 (2002). While these are alternative options, here the court did not count the value of these assets twice as defendant alleges. Rather, the court distributed the assets to defendant and also weighed his post-separation conversion of these assets in considering the equitable distribution.

[15] Defendant also asserts that the court erred in making finding 111 that defendant "earns and has the ability to earn large and substantial sums." However, defendant's answer, tax returns from 1997 through 2002 and his financial statement all support this finding.

[16] Defendant also contends that the court erred in finding 112 by considering as a distributional factor that defendant will be entitled to receive social security benefits in the future and that plaintiff will not. Although defendant refused to produce his social security statement at trial after being subpoenaed, plaintiff did introduce his Form W-2 showing that social security taxes were being withheld from defendant's SEI salary. Neither party produced evidence showing that plaintiff was entitled to receive any social security benefits.

[17] Defendant contends that the court erred in failing to consider evidence of other distributional factors. "[W]hen a party presents evidence which would allow the trial court to determine that an equal distribution of the marital assets would be inequitable, the trial court must then consider all of the distributional factors listed in G.S. 50-20(c), *Smith v. Smith*, 314 N.C. 80, 331 S.E.2d 682 (1985), and

must make sufficient findings as to each statutory factor on which evidence was offered." *Locklear v. Locklear*, 92 N.C. App. 299, 305-6, 374 S.E.2d 406, 410 (1988). N.C. Gen. Stat. § 50-20(c) lists the factors to be considered:

(1) The income, property, and liabilities of each party at the time the division of property is to become effective.

(2) Any obligation for support arising out of a prior marriage.

(3) The duration of the marriage and the age and physical and mental health of both parties.

(4) The need of a parent with custody of a child or children of the marriage to occupy or own the marital residence and to use or own its household effects.

(5) The expectation of pension, retirement, or other deferred compensation rights that are not marital property.

(6) Any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services, or lack thereof, as a spouse, parent, wage earner or homemaker.

(7) Any direct or indirect contribution made by one spouse to help educate or develop the career potential of the other spouse.

(8) Any direct contribution to an increase in value of separate property which occurs during the course of the marriage.

(9) The liquid or nonliquid character of all marital property and divisible property.

(10) The difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest, intact and free from any claim or interference by the other party.

(11) The tax consequences to each party, including those federal and State tax consequences that would have been incurred if the marital and divisible property had been sold or liquidated on the date of valuation. The trial court may, however, in its discretion, consider whether or when such tax consequences are reasonably likely to occur in determining the equitable value deemed appropriate for this factor.

(11a) Acts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert the marital property or divisible property, or both, during the period after separation of the parties and before the time of distribution.

\*\*\*

(12) Any other factor which the court finds to be just and proper.

N.C. Gen. Stat. § 50-20 (2003). Here, the court made the required findings. Defendant again draws our attention to his lack of an earned income, arguing that it should have been considered by the court as a distributional factor. As discussed *supra*, the court found that defendant had substantial income. In addition, defendant contends the court should have considered his age and health, and his liquidated IRA as distributional factors. The court found that his age and any health problems defendant had did not prevent him from earning income. Defendant also asserts that the court should have considered the lack of liquidity of the parties' marital assets and defendant's tax liabilities. Testimony from defendant's accountants supported the court's findings that any tax liabilities would likely be eliminated by carrying his SEI losses back or forward.

Defendant next argues that the alimony order is not supported by proper conclusions, valid findings or competent evidence. We do not agree.

[18] Defendant contends that the evidence failed to support finding 122 that defendant's monthly income will continue to exceed $14,000 per month from earnings from sale of lots of the Riverfront and Colony Road Partnership projects, or finding 142 that defendant will have a monthly income of at least $15,000. Defendant asserts that the value of these assets had already been included in the value of SEI and that using them in the alimony award constituted inappropriate "double dipping." However, defendant's own evidence regarding SEI's average profitability indicated that he could expect to earn over $20,000 per month. In addition, the court heard evidence of the complex and constant turnover of properties through defendant's real estate companies, and we see no error in its findings here.

[19] Defendant also contends that the court erred in not making findings regarding its reasons for the duration of the alimony. "[A] trial court's failure to make any findings regarding the reasons for the amount, duration, and the manner of payment of alimony violates N.C. Gen. Stat. § 50-16.3(A)(c)." *Fitzgerald v. Fitzgerald*, 161 N.C.

App. 414, 421, 588 S.E.2d 517, 522-23 (2003). The court ordered that alimony continue until the death of one of the parties, or plaintiff's remarriage or cohabitation, but failed to make any finding about the reasons for this duration. Plaintiff asserts that the findings that she had no income after thirty-eight years of marriage are sufficient. We do not agree. We remand for further findings of fact concerning the duration of the alimony award.

[20] Defendant also contends that finding 144, that plaintiff's combined tax rate would be 15%, was unsupported by the evidence. "While it is true that the express language of G.S. § 50-16.5(a) does not include the income tax consequences of an award of alimony as a factor to be weighed in the balance in determining the proper amount of the award, we are of the opinion that such would be a proper consideration in making that determination." *Clark v. Clark*, 301 N.C. 123, 132-33, 271 S.E.2d 58, 65-66 (1980). Plaintiff's expert, Mr. Walker, testified that the 15% combined tax rate was appropriate and that he knew of no rate changes; defendant failed to offer any controverting evidence regarding tax rate. The court did not abuse its discretion in making this finding.

[21] Defendant contends that the court erred in failing to make findings concerning the factors listed in N.C. Gen. Stat. § 50-16.3A(b), specifically defendant's age, health, lack of earned income and tax liabilities. Finding 7 notes defendant's age and past health concerns. Findings 116 through 121 note defendant's gross and after-tax income between 1997 and 2002. This assignment of error is without merit.

[22] Defendant next contends that the court erred in continuing certain terms of the postseparation award and in making the alimony judgment binding on his heirs. Any finding purporting to make alimony binding on defendant's heirs is error, but is without effect as such a term is barred by statute. N.C. Gen. Stat. § 50-16.9(b) (2005) ("Postseparation support or alimony shall terminate upon the death of either the supporting or the dependent spouse.") We vacate this portion of the judgment.

[23] Defendant also argues that the court erred in awarding attorney's fees to plaintiff based on these findings. Because we believe the findings are sufficient, we disagree.

"At any time that a dependent spouse would be entitled to alimony . . . the court may . . . enter an order for reasonable counsel fees for the benefit of such spouse, to be paid and secured by the

supporting spouse . . . ." N.C. Gen. Stat. § 50-16.4 (2005). To recover attorneys' fees pursuant to this statute in an action for alimony, the requesting spouse must be entitled to the relief demanded, must be a dependent spouse, and must have insufficient means to subsist during the prosecution of the suit and to defray the expenses thereof. *Caldwell v. Caldwell*, 86 N.C. App. 225, 227, 356 S.E.2d 821, 822-23, *cert. denied*, 320 N.C. 791, 361 S.E.2d 72 (1987). In addition, "attorneys' fees are not recoverable in an action for equitable distribution so that, in a combined action, the fees awarded must be attributable to work by the attorneys on the divorce, alimony and child support actions." *Patterson v. Patterson*, 81 N.C. App. 255, 262, 343 S.E.2d 595, 600 (1986). Thus, the trial court must "make findings of fact as to the nature and scope of legal services rendered, the skill and the time required upon which a determination of reasonableness of the fees can be based." *Williamson v. Williamson*, 140 N.C. App. 362, 365, 536 S.E.2d 337, 339 (2000).

Here, the judgment contains the following pertinent findings:

123. Wife is currently 58 years old and the course of the parties 38-year marriage has been primarily a homemaker and mother, although she does currently own and operate an antique business known as Lillie [sic] Antiques & collectibles Inc. Wife works approximately 5-6 hours per week at said business, which has not made a profit over the past several years.

\*\*\*

126. Wife has been and continues to be actually and substantially dependent on Husband for her maintenance and support and substantially in need of maintenance and support from Husband in order to maintain her accustomed standard of living. Wife is the dependant spouse and Husband is the supporting spouse of the parties' marriage.

\*\*\*

143. Wife's total reasonable monthly needs and expenses are $6,139 as previously found herein. Will have no mortgage payments upon the sale of the Winged Bourne residence and her receipt of all the proceeds from such sale. The Court makes the reasonable assumption that these proceeds will be used to purchase a new residence. The sum of $500 per month is a reasonable allocation for the expenses of taxes and insurance on the new residence. *Wife's total employment income and other recur-*

*ring earnings from all sources are zero per month as found herein.* Wife will receive dividends of $2,354 per month from the FNB stock. Wife has paid federal income tax at an effective rate of approximately 8% and no state income tax when she has had taxable income since the parties separated as Lillie's Antique's [sic] has reported a loss over the past few years. After subtracting Wife's net income $2,334, Wife needs $3,805 per month in order to meet her reasonable monthly needs based upon her accustomed standard of living during the course of the marriage and in consideration of her income and earning abilities.

\*\*\*

146. Wife is substantially in need of a financial contribution from Husband in order to maintain her accustomed standard of living.

147. Wife is a "dependant spouse" of her marriage to Husband as that term is defined in N.C. Gen. Stat. § 50-16.2A(2).

\*\*\*

149. Considering all the facts and circumstances of this case, including the factors set out in N.C. Gen. Stat. § 50-16.2A, the resources of Wife are not adequate to meet her reasonable needs for support.

(Emphasis supplied.) The court also made two findings denominated 153 which detail the reasonable attorneys' fees plaintiff incurred regarding the alimony portion of the litigation. These findings are sufficient to support the court's award of attorneys' fees. We overrule this assignment of error.

[24] Defendant also contends the court erred in failing to distribute the property in kind, in ordering a distributive award, and in failing to give him credit for an interim distribution to plaintiff. N.C. Gen. Stat. § 50-20 states, in pertinent part:

(e) Subject to the presumption of subsection (c) of this section that an equal division is equitable, it shall be presumed in every action that an in-kind distribution of marital or divisible property is equitable. This presumption may be rebutted by the greater weight of the evidence, or by evidence that the property is a closely held business entity or is otherwise not susceptible of division in-kind. In any action in which the presumption is rebutted, the court in lieu of in-kind distribution shall provide for a distributive award in order to achieve equity

between the parties. The court may provide for a distributive award to facilitate, effectuate or supplement a distribution of marital or divisible property. The court may provide that any distributive award payable over a period of time be secured by a lien on specific property.

N.C. Gen. Stat. § 50-20(e) (2003). "[I]n equitable distribution cases, if the trial court determines that the presumption of an in-kind distribution has been rebutted, it must make findings of fact and conclusions of law in support of that determination." *Urciolo v. Urciolo*, 166 N.C. App. 504, 507, 601 S.E.2d 905, 908 (2004). Here, the distributive award was necessary in order to preserve SEI and distribute it to defendant in its entirety. However, the court failed to make the required findings that defendant had sufficient liquid assets from which to pay the distributive award. "Although defendant may in fact be able to pay the distributive award, defendant's evidence is sufficient to raise the question of where defendant will obtain the funds to fulfill this obligation." *Id.* (quoting *Embler v. Embler*, 159 N.C. App. 186, 188, 582 S.E.2d 628, 630 (2003)). We reverse the trial court on this assignment of error, and remand for additional findings of fact on whether defendant has sufficient liquid assets to pay the distributive award to plaintiff, consistent with this opinion.

Affirmed in part, reversed in part, vacated in part and remanded.

Judges HUNTER and BRYANT concur.