DORIS FRIEND-NOVORSKA, Plaintiff v. JAMES C. NOVORSKA, Defendant

No. COA98-84

(Filed 1 December 1998)

**Divorce— equitable distribution—creation of joint account from separate funds—expressed intent**

The trial court did not err in an equitable distribution action by classifying a joint wealth management account as defendant-husband's separate property and distributing it to him where it was opened with funds inherited by defendant and subse-

FRIEND-NOVORSKA v. NOVORSKA

[131 N.C. App. 508 (1998)]

quently added to with separate properties in the form of securities. The plain language of N.C.G.S. § 50-20(b)(2) requires that the spouse claiming a joint account as marital property where the account was created with separate funds demonstrate by a preponderance of the evidence that the exchange of separate property was accompanied by an intention that the account be marital property and that such intention was expressly stated in the conveyance.

Appeal by plaintiff from equitable distribution judgment entered 24 July 1997 by Judge Charles T. L. Anderson in Orange County District Court. Heard in the Court of Appeals 21 October 1998.

Plaintiff Doris Friend-Novorska and defendant James C. Novorska were married on 13 February 1982. In March 1989, defendant's mother died. Defendant testified that he knew he was the beneficiary under his mother's will prior to her death, and "had there been any funds left over . . . what I wanted to do was to invest some, and for my own personal use, and to use the remainder for the marriage." On 12 February 1990, defendant deposited $230,000.00 of his inherited funds in a joint savings account with plaintiff. In March 1990 the parties transferred $130,780.00 from their joint savings account into a joint checking account.

After several meetings attended by plaintiff, defendant, and a financial advisor, the following disposition was made of the inherited funds: (1) a $50,000.00 trust fund was established for defendant's son by a prior marriage; (2) a small IRA was established for plaintiff; (3) a small IRA was set up for defendant; (4) a small tax exempt bond fund was set up in the joint names of plaintiff and defendant; and (5) the IDS account which is the subject of this appeal was opened by transferring $79,000.00 from the joint checking account into the joint IDS account on 4 April 1990. The balance of the $230,000.00 inheritance was used by both plaintiff and defendant to buy marital property items. In November 1993, defendant deposited additional separate property in the form of securities valued at $39,000.00 into the IDS account.

The parties separated on 30 June 1995, at which time the IDS Wealth Management account had a net value of $157,496.96. The increase in value of the IDS account was entirely passive. At trial, defendant testified that he never intended to make a gift to plaintiff of any interest in the IDS account. The trial court classified the joint IDS

account as defendant-husband's separate property and distributed it to him. Plaintiff appealed, contending the IDS account should have been classified as marital property and equitably distributed.

*Hayes Hofler & Associates, P.A., by R. Hayes Hofler, for plaintiff appellant.*

*Sharpe & Mackritis, P.L.L.C., by Jimmy D. Sharpe and Lisa M. Dukelow, for defendant appellee.*

HORTON, Judge.

In 1981, the North Carolina General Assembly "sought to alleviate the unfairness of the common law [title theory] rule by enacting our Equitable Distribution Act . . . . Equitable distribution reflects the idea that marriage is a partnership enterprise to which both spouses make vital contributions . . . ." *White v. White*, 312 N.C. 770, 774-75, 324 S.E.2d 829, 831-32 (1985). "[T]he statute is a legislative enactment of public policy so strongly favoring the equal division of marital property that an equal division is made *mandatory* 'unless the court determines that an equal division is not equitable.' N.C.G.S. 50-20(c)." *Id.* at 776, 324 S.E.2d at 832.

The Equitable Distribution Act (the Act) expresses a legislative preference for marital property through a provision creating a presumption that "all property acquired after the date of marriage and before the date of separation is marital property except property which is separate property under subdivision (2) of this subsection." N.C. Gen. Stat. § 50-20(b)(1) (Cum. Supp. 1997). The Act then defines separate property in subsection (2) as "all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage." N.C. Gen. Stat. § 50-20(b)(2).

The language of this subsection expresses "a clear legislative intent that separate property brought into the marriage or acquired by a spouse during the marriage be returned to that spouse, if possible, upon dissolution of the marriage." *Wade v. Wade*, 72 N.C. App. 372, 381, 325 S.E.2d 260, 269, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985). It is clear that a gift received by *a* spouse from a *third party* is the separate property of the receiving spouse. *See Loeb v. Loeb*, 72 N.C. App. 205, 324 S.E.2d 33, *cert. denied*, 313 N.C. 508, 329 S.E.2d 393 (1985). Where, however, a spouse makes a gift of separate property to the other spouse during marriage, the property is consid-

ered the separate property of the receiving spouse *only* if "such an intention is stated in the conveyance." N.C. Gen. Stat. § 50-20(b)(2).

Further, where a spouse acquires property in exchange for his or her separate property, the acquired property remains separate "regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance." *Id.* In this case, it is not disputed that defendant exchanged separate funds he inherited from his mother's estate for the investments in the IDS fund. However, plaintiff argues the IDS fund should be classified as marital property because the evidence demonstrates that defendant intended the IDS fund to be held as marital property.

The plain language of the statute requires that in order to classify a joint account created by the deposit of separate funds as marital property, the spouse claiming such a classification must demonstrate by a preponderance of the evidence that the exchange of separate property was accompanied by: (1) an *intention* that the account be marital property; and (2) that such intention was *expressly stated in the conveyance.* N.C. Gen. Stat. § 50-20(b)(2). We have found that in cases involving the exchange of separate property for real property held by the entireties, there is a presumption of gift, rebuttable only by clear, cogent and convincing evidence. *McLeod v. McLeod,* 74 N.C. App. 144, 154, 327 S.E.2d 910, 916, *cert. denied,* 314 N.C. 331, 333 S.E.2d 488 (1985), *overruled in part on other grounds, Johnson v. Johnson,* 317 N.C. 437, 346 S.E.2d 430 (1986).

However, we have not found an "express statement" of an intent to create marital property in any of our reported cases involving personal property and the creation of joint accounts. Instead, we have, pursuant to the plain language of the "exchange provision" of N.C. Gen. Stat. § 50-20(b)(2), uniformly held that "[t]he deposit of [separate] funds into a joint account, standing alone, is not sufficient evidence to show a gift or an intent to convert the funds from separate property to marital property." *Manes v. Harrison-Manes,* 79 N.C. App. 170, 172, 338 S.E.2d 815, 817 (1986) (although husband added wife's name to bank account and annuity, trial court held not an express contrary intention in conveyance; properly classified as separate property); *Brown v. Brown,* 72 N.C. App. 332, 336, 324 S.E.2d 287, 289 (1985) (husband's actions in depositing funds in joint savings account not sufficient evidence of an express contrary intention in conveyance).

Plaintiff argues she met her burden in this case by producing evidence which demonstrated defendant intended the IDS account to be the property of the marital estate. Plaintiff contends that in addition to the establishment of the joint IDS account, defendant-husband stated even before he received the bequest from his mother that at least part of his inheritance would be used "for the marriage." She also argues that the parties met jointly with an investment advisor before setting up the joint account so the advisor could help them with long-range financial planning for their futures; that the parties spent about $100,000.00 of defendant's inherited funds for marital purposes; and that they met with a financial advisor to discuss investments for their futures. She stresses the inherited funds were first placed in a joint checking account and then in a joint savings account, both of which she had equal access with defendant. Finally, she argues that when defendant added $39,000.00 of separate funds to the account in question, he did so as part of a long-range financial planning for both their futures.

However, plaintiff ignores the plain language of the statute which requires that a "contrary intention [be] expressly stated in the conveyance." N.C. Gen. Stat. § 50-20(b)(2). Although this "exchange provision" has been the subject of scholarly comment, no decisions of this Court answer such questions as whether the "express statement" can be oral, whether such statement must be made contemporaneously with the exchange of property, and whether the "conveyance" must be in writing.

Assuming, *arguendo*, that defendant's statement that he intended to use "part" of his inheritance for marital purposes meets the requirement of an "express statement" of intention, it does not entitle plaintiff to a favorable decision on the issue for at least three reasons. First, defendant's statement is not an express statement of intention that the IDS funds were to be the property of the marital estate. At best, it amounts to a statement of intention that a portion of his inheritance was going to be used for marital purposes and, in fact, more than $100,000.00 was used in that fashion. Second, plaintiff was not able to offer evidence of any express statement by defendant that the IDS funds would be marital property. Third, the statement in question was made about a year prior to defendant's exchanging his separate funds for the IDS account. Due to the passage of time, we do not believe the statement was one made "in the conveyance." Although the focus of the parties' arguments is on the IDS account, we believe the same reasoning would apply to the deposit of the inherited funds in the joint checking and savings accounts.

Further, defendant offered unequivocal testimony that he never intended the IDS funds to be a gift either to plaintiff or the marital estate, and the trial court found his testimony to be credible. After weighing the evidence, the trial court found as a fact that "defendant at no time expressly stated that he intended to make the assets in this account a gift to the marriage or a gift to the plaintiff." In its conclusions of law, the trial court stated the "evidence shows that the defendant at no time during the marriage expressly stated that the funds deposited in the IDS fund were considered by him to be marital property or in any way intended by the defendant to be a gift to the marriage by depositing the funds into joint accounts." The trial court then adjudged the entire IDS account to be the separate property of defendant.

Finally, plaintiff argues the decision of our Supreme Court in *Haywood v. Haywood*, 333 N.C. 342, 425 S.E.2d 696 (1993), and our recent decision in *Holterman v. Holterman*, 127 N.C. App. 109, 488 S.E.2d 265, *disc. review denied*, 347 N.C. 267, 493 S.E.2d 455 (1997) changed the holdings in *Manes*, 79 N.C. App. 170, 338 S.E.2d 815; *Brown*, 72 N.C. App. 332, 324 S.E.2d 287; and other similar decisions of this Court dealing with the deposit of separate funds into joint accounts. Plaintiff claims both *Haywood* and *Holterman* stand for the proposition that "express donative intent could be inferred from depositing the separate funds into jointly held accounts and the parties' subsequent actions in purchasing marital assets." We disagree.

On the date of separation of the *Haywood* parties, 100 gold kruggerands were held in a joint lockbox in Canada. *See Haywood v. Haywood*, 106 N.C. App. 91, 415 S.E.2d 565, *disc. reviews denied*, 331 N.C. 553, 418 S.E.2d 665-66 (1992), *rev'd in part*, 333 N.C. 342, 425 S.E.2d 696 (1993). The trial court held the coins were marital property. The decision of the trial court was reversed by a majority of this Court, with Judge Wynn dissenting. In his dissent, Judge Wynn did recite that the coins were held in a joint lockbox to which the wife had a key, but the crucial statement in the dissent is that "plaintiff [husband] was unable to sufficiently trace the source of the funds with which he contends that he purchased the precious metals." *Id.* at 104, 415 S.E.2d at 573. The decision of this Court was reversed by our Supreme Court "for the reasons stated in the dissent by Judge Wynn . . . ." *See Haywood*, 333 N.C. 342, 425 S.E.2d 696 (1993).

In *Holterman*, 127 N.C. App. 109, 488 S.E.2d 265, the wife's inherited funds had been commingled with marital funds in joint accounts

and used for marital purposes for more than 40 years, so that it was not possible at trial to trace her separate funds. In both *Haywood* and *Holterman* there were serious evidentiary problems, so that the source of funds for the assets in question could neither be clearly identified nor traced. In the instant case, there is no tracing problem and thus neither *Haywood* nor *Holterman* supports plaintiff's position.

We hold the findings of the trial court are supported by competent evidence and the findings of fact, in turn, support its conclusions of law. In light of this disposition, we need not address appellee's cross-assignment of error. N.C.R. App. P. 10(d); *Hanton v. Gilbert*, 126 N.C. App. 561, 572, 486 S.E.2d 432, 439, *disc. review denied*, 347 N.C. 266, 493 S.E.2d 454 (1997). For the foregoing reasons, the decision of the trial court is

Affirmed.

Judges MARTIN, John C. and TIMMONS-GOODSON concur.