JAMES W. LANGSTON, Plaintiff v. JULIE RICHARDSON, as Executrix of the Estate of JEANNE E. LANGSTON, Defendant

No. COA09-1535

(Filed 3 August 2010)

**1. Divorce— equitable distribution—classification—marital property—investment accounts**

The trial court did not err in an equitable distribution case by concluding as a matter of law that the investment accounts were marital property. Defendant wife acquired the accounts during the marriage and prior to separation, and plaintiff husband failed to show by a preponderance of the evidence that the accounts were separate property when he did not state in the conveyance that he intended for the accounts to remain separate property.

**2. Divorce— equitable distribution—unequal division—factors including paying other party's separate debt**

The trial court did not err in an equitable distribution case by ordering plaintiff husband to pay the equity line debt the court found to be defendant wife's separate debt. Plaintiff was awarded $220,992.40 and defendant was awarded $87,021.05 as their sole and separate property, and the court found plaintiff's obligation to pay the equity line debt was a major factor for an unequal distribution.

**3. Appeal and Error— preservation of issues—failure to argue**

Assignments of error not argued in plaintiff's brief were deemed abandoned under N.C. R. App. P. 28(b)(6).

Judge WYNN dissenting.

Appeal by plaintiff from judgment entered 9 June 2009 by Judge C. Christopher Bean in Perquimans County District Court. Heard in the Court of Appeals 27 April 2010.

*The Twiford Law Firm, P.C., by Edward A. O'Neal, for plaintiff-appellant.*

*Trimpi & Nash, LLP, by John G. Trimpi, for defendant-appellee.*

CALABRIA, Judge.

James W. Langston ("plaintiff") appeals the trial court's equitable distribution judgment ("the order"). The trial court classified certain joint accounts as marital property, certain debt as separate property, and ordered an equitable distribution of property. We affirm.

I. BACKGROUND

On 1 September 1998, plaintiff and Jeanne Langston ("Mrs. Langston") (collectively "the parties") were married in Hertford County, North Carolina. There were no children born of the marriage. The parties lived together as husband and wife until 11 February 2004, when they separated.

Prior to the marriage, plaintiff owned several investment accounts. After the parties were married and prior to the date of separation, plaintiff added Mrs. Langston's name to the investment accounts. Also during the marriage, plaintiff and Mrs. Langston negotiated an equity line loan with Wachovia Bank ("the equity line"). On

218

23 January 2004, less than three weeks before the date of separation, Mrs. Langston withdrew $51,000.00 from the equity line and deposited the funds into a bank account listed in her individual name. Prior to Mrs. Langston's withdrawal, the total indebtedness of the equity line was $6,419.78. On the date of separation, the total indebtedness was $57,419.78.

On 14 May 2004, plaintiff filed a complaint in Perquimans County District Court seeking, *inter alia*, an absolute divorce as well as a distribution of the parties' marital property and debt. Mrs. Langston answered and counterclaimed, seeking, *inter alia*, an equitable distribution. Plaintiff subsequently moved to sever the issue of absolute divorce from the other claims. On 9 May 2005, the trial court granted plaintiff an absolute divorce.

Mrs. Langston died testate on 12 July 2005. Julie Richardson, Executrix of the Estate of Mrs. Langston ("defendant"), was substituted as the party defendant and appeared in a representative capacity in this matter. On 2 December 2008, an Equitable Distribution Pretrial Order was filed. Schedules were included explaining the reasons both parties contended that an equal division of property was not equitable.

The equitable distribution hearing was held on 23 March 2009 in Perquimans County District Court. Plaintiff was 89 years old, received income in the amount of $792.00 per month in Social Security benefits and approximately $1,500.00 per month in retirement benefits. Following the hearing, the trial court entered an order finding and concluding that the investment accounts were marital property and that $51,000.00 of the equity line loan was defendant's separate debt. The court distributed the Wachovia CAP Account, Dominion Direct Account, and Putnam Hartford Capital Manager Contract to plaintiff, and the America's Utility Fund Account to defendant. The court also ordered plaintiff to pay defendant's $51,000.00 separate debt and stated that plaintiff's "obligation to do so was considered as a major factor for an unequal distribution." Plaintiff appeals.

## II. STANDARD OF REVIEW

"The division of property in an equitable distribution is a matter within the sound discretion of the trial court." *Cunningham v. Cunningham*, 171 N.C. App. 550, 555, 615 S.E.2d 675, 680 (2005) (internal quotations and citation omitted). "When reviewing an equitable distribution order, the standard of review 'is limited to a deter-

mination of whether there was a clear abuse of discretion.' " *Petty v. Petty*, —— N.C. App. ——, ——, 680 S.E.2d 894, 898 (2009) (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White*, 312 N.C. at 777, 324 S.E.2d at 833. "Further, '[i]t is well established that a trial court's conclusions of law must be supported by its findings of fact.' " *Squires v. Squires*, 178 N.C. App. 251, 256, 631 S.E.2d 156, 159 (2006) (quoting *Robertson v. Robertson*, 167 N.C. App. 567, 574, 605 S.E.2d 667, 671 (2004)). "[T]he findings of fact are conclusive [on appeal] if they are supported by any competent evidence from the record." *Beightol v. Beightol*, 90 N.C. App. 58, 60, 367 S.E.2d 347, 348 (1988).

## III. INVESTMENT ACCOUNTS

[1] Plaintiff argues that the trial court erred in concluding as a matter of law that the investment accounts were marital property. We disagree.

As an initial matter, we note that in the instant case, the trial court made sixty-nine findings of fact in the order. Plaintiff argues only Findings 20, 23, 28, 34 and 40. "Under N.C.R. App. P. 10(a), this Court's review is limited to those findings of fact and conclusions of law properly assigned as error." *Dreyer v. Smith*, 163 N.C. App. 155, 156, 592 S.E.2d 594, 595 (2004) (citing *Koufman v. Koufman*, 330 N.C. 93, 98, 408 S.E.2d 729, 731 (1991)). Assignments of error not argued in plaintiff's brief are abandoned. N.C. R. App. P. 28(b)(6) (2009). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman*, 330 N.C. at 97, 408 S.E.2d at 731. Therefore, in the instant case, all the other findings to which plaintiff has not assigned error or argued are presumed to be supported by competent evidence and are binding on this Court.

A pending action for equitable distribution does not abate upon the death of a party. *Estate of Nelson v. Nelson*, 179 N.C. App. 166, 170, 633 S.E.2d 124, 128 (2006). "Pursuant to N.C. Gen. Stat. § 50-20 (2007), equitable distribution is a three-step process requiring the trial court to '(1) determine what is marital [and divisible] property; (2) find the net value of the property; and (3) make an equitable distribution of that property.' " *Petty*, —— N.C. App. at ——, 680 S.E.2d at 898 (quoting *Cunningham*, 171 N.C. App. at 555, 615 S.E.2d at 680). "The initial obligation of the trial court in any equitable distribution

action is to identify the marital property in accordance with G.S. 50-20 and the appropriate case law." *Cornelius v. Cornelius*, 87 N.C. App. 269, 271, 360 S.E.2d 703, 704 (1987) (citing *Mauser v. Mauser*, 75 N.C. App. 115, 330 S.E.2d 63 (1985). N.C. Gen. Stat. § 50-20(b) (2008) defines marital and separate property as follows:

(1) "Marital property" means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property . . . in accordance with subdivision (2) . . . of this section.

(2) "Separate property" means all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage.

"Under N.C. Gen. Stat. Sec. 50-20(c), only marital property is subject to distribution." *Rogers v. Rogers*, 90 N.C. App. 408, 409, 368 S.E.2d 412, 413 (1988). "The trial court must classify and identify property as marital or separate 'depending upon the proof presented to the trial court of the nature' of the assets." *Atkins v. Atkins*, 102 N.C. App. 199, 206, 401 S.E.2d 784, 787 (1991) (quoting *Johnson v. Johnson*, 317 N.C. 437, 455, 346 S.E.2d 430, 440 n.4 (1986)).

The burden of showing the property to be marital is on the party seeking to classify the asset as marital and the burden of showing the property to be separate is on the party seeking to classify the asset as separate. A party may satisfy her burden by a preponderance of the evidence.

*Id.* (citations omitted).

The party claiming the property to be marital must meet her burden by showing by the preponderance of the evidence that the property: (1) was "acquired by either spouse or both spouses"; and (2) was acquired "during the course of the marriage"; and (3) was acquired "before the date of the separation of the parties"; and (4) is "presently owned." N.C.G.S. § 50-20(b)(1). If this burden is met and a party claims the property to be separate, that party has the burden of showing the property is separate. This burden is met by showing by the preponderance of the evidence that the property was: (1) "acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage" (third-party gift provision); or (2) "acquired by gift from

the other spouse during the course of marriage" and the intent that it be separate property is "stated in the conveyance" (interspousal gift provision); or (3) was "acquired in exchange for separate property" and no contrary intention that it be marital property is "stated in the conveyance" (exchange provision). N.C.G.S. § 50-20(b)(2). If both parties meet their burdens, then under the statutory scheme of N.C.G.S. § 50-20(b)(1) and (b)(2), the property is excepted from the definition of marital property and is, therefore, separate property.

*Id.* at 206, 401 S.E.2d at 787-88.

In the instant case, plaintiff testified as follows:

Q: [Plaintiff's counsel]: Did you at some point in time put Mrs. Langston's name on these [investment] accounts?

A: [Plaintiff]: I guess I did, I believe.

Q: Okay. And do you know how you did that?

A: She did it. I made that decision, but she's the one that initiated it.

. . .

Q: [Plaintiff], tell me what you intended to do when you put Mrs. Langston's name on these accounts.

A: Well, I (inaudible) that she was going to [be] part of it, I guess.

Q: She was going to be part of it. You wanted her to be able to access the accounts?

A: Yes, sir.

On cross-examination, plaintiff testified:

Q: [Defendant's counsel]: But you treated the accounts differently; you put her name on those accounts?

A: [Plaintiff]: Yes, I did.

Q: And isn't the reason that you did that, Mr. Langston is that you wanted to take care of her if something would happen to you?

A: Yeah.

Q: And you told her that, did you not?

A: Sure.

Plaintiff further testified that he was from the "old school," which to him meant that in a marriage, "what's mine is yours, what's yours is mine[.]" Defendant then testified on behalf of Mrs. Langston since Mrs. Langston was deceased and defendant had witnessed Mrs. Langston's sworn testimony in her deathbed deposition from the Norfolk Sentara Hospital:

Q: [Defendant's counsel]: Ms. Richardson, did I ask Ms. Langston about the circumstances existing at the time the accounts were made joint?

A: [Defendant]: Yes.

Q: What did she testify about?

A: She said that about a month after [Ms. Langston and plaintiff] married they discussed adding her onto those [investment] accounts. [Plaintiff] had stated that he wanted her to be taken care of if he were to pass. And that she then was added onto those accounts with his knowledge.

The trial court found that the accounts were marital property since Mrs. Langston acquired the accounts during her marriage to plaintiff and prior to their separation. Therefore, the burden shifted to plaintiff to show by a preponderance of the evidence that the accounts were separate property. *See Lilly v. Lilly*, 107 N.C. App. 484, 486, 420 S.E.2d 492, 493 (1991).

"When classifying real property as marital or separate, the fact that legal title is in one or the other spouse, or in both, is not controlling. Rather, property is classified according to the definitions of marital and separate property contained in N.C. Gen. Stat. § 50-20(b)." *Estate of Nelson*, 179 N.C. App. at 169, 633 S.E.2d at 127 (citation omitted). Under N.C. Gen. Stat. § 50-20, "property acquired by gift from the other spouse during the course of the marriage shall be considered separate property *only if* such an intention is stated in the conveyance." N.C. Gen. Stat. § 50-20(b)(2) (2008) (emphasis added). "Thus, there is a presumption under N.C. Gen. Stat. § 50-20(b) that property acquired during the marriage is marital property." *Estate of Nelson*, 179 N.C. App. at 169, 633 S.E.2d at 127.

In the instant case, plaintiff testified that he added Mrs. Langston's name to the accounts and told her that the reason for doing so was to "take care of her" when he passed away. Plaintiff also contacted some of the various investment houses and requested having Mrs. Langston's name added to the accounts. Since plaintiff did

LANGSTON v. RICHARDSON

[206 N.C. App. 216 (2010)]

not state in the conveyance that he intended for the accounts to remain separate property, he did not prove by a preponderance of the evidence that the accounts were separate property. The trial court properly concluded the accounts were marital, not separate property. Plaintiff's assignments of error are overruled.

## IV. UNEQUAL DISTRIBUTION

[2] Plaintiff argues that the trial court erred in ordering him to pay the equity line debt which the court found to be defendant's separate debt. We disagree.

N.C. Gen. Stat. § 50-20(c) states, in pertinent part:

If the court determines that an equal division is not equitable, the court shall divide the marital property . . . equitably. The court shall consider all of the following factors under this subsection:

(1) The income, property, and liabilities of each party at the time the division of property is to become effective.

. . .

(3) The duration of the marriage and the age and physical and mental health of both parties.

. . .

(5) The expectation of pension, retirement, or other deferred compensation rights that are not marital property.

(6) Any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services, or lack thereof, as a spouse, parent, wage earner or homemaker.

. . .

(11b) In the event of the death of either party prior to the entry of any order for the distribution of property made pursuant to this subsection:

a. Property passing to the surviving spouse by will or through intestacy due to the death of a spouse.

b. Property held as tenants by the entirety or as joint tenants with rights of survivorship passing to the surviving spouse due to the death of a spouse.

    c. Property passing to the surviving spouse from life insurance, individual retirement accounts, pension or profit-sharing plans, any private or governmental retirement plan or annuity of which the decedent controlled the designation of beneficiary (excluding any benefits under the federal social security system), or any other retirement accounts or contracts, due to the death of a spouse.

. . .

    (12) Any other factor which the court finds to be just and proper.

N.C. Gen. Stat. § 50-20(c) (2008).

    In the instant case, the trial court's equitable distribution judgment awarded $220,992.40 to plaintiff as his sole and separate property and $87,021.05 to defendant as her sole and separate property. The court ordered plaintiff to pay $51,000.00 of the equity line debt that the trial court classified as defendant's separate debt. Stating that plaintiff's "obligation to do so was considered as a major factor for an unequal distribution," the court concluded that "[t]he division of the marital property and debt . . . is equitable after considering the evidence presented and the contentions asserted by each of the parties for an unequal division." Plaintiff's assignments of error are overruled.

## V. CONCLUSION

**[3]** Assignments of error not argued in plaintiff's brief are abandoned. N.C.R. App. P. 28(b)(6) (2009). The trial court's equitable distribution order is affirmed.

    Affirmed.

    Judge STEELMAN concurs.

    Judge WYNN dissents by separate opinion.

    WYNN, Judge, dissenting.

    A spouse claiming that separate funds deposited into a joint account represent marital property must demonstrate "that the exchange of separate property was accompanied by: (1) an *intention* that the account be marital property; and (2) that such intention was

*expressly stated in the conveyance.*"[1] In the present case, the trial court classified several joint accounts as marital property absent such a showing by Defendant. Because I would hold that the trial court erred in classifying the accounts as marital property, I respectfully dissent.

The facts of this case are not in dispute. Plaintiff James W. Langston and Defendant Jeanne E. Langston were married in 1998. Prior to the marriage, Plaintiff owned various investment accounts. During the marriage, Defendant's name was placed on the accounts.

At the hearing conducted in this matter, Plaintiff indicated that he placed Defendant's name on the accounts because he wanted her "to be a part of it." On cross-examination, counsel for Defendant asked Plaintiff, "And isn't the reason that you did that . . . is that you wanted to take care of her if something would happen to you?" Plaintiff replied, "yeah." Plaintiff could not recall "any particular conversation" when he informed Defendant of this intention.

Also during the marriage, the parties negotiated an equity line loan with Wachovia Bank. On 23 January 2004, Defendant received a cash advance of $51,000 from the Wachovia Equity Line which she deposited into her individually owned bank account. The trial court found that this debt represented Defendant's separate property.

Plaintiff commenced this action on 14 May 2004, seeking a divorce and equitable distribution of the marital estate. The parties were divorced by a judgment filed 9 May 2005. During the pendency of this action, Defendant died and Julie Richardson was appointed executrix of her estate. The equitable distribution case was tried during the 23 March 2009 civil session of District Court in Perquimans County. The trial court filed an equitable distribution judgment distributing the marital property on 9 June 2009. Plaintiff appealed.

On appeal, Plaintiff alleges the trial court erred in (I) concluding that the investment accounts became marital property; and (II) ordering Plaintiff to pay the equity line debt.

## I

Plaintiff first argues that the trial court erred in concluding that the investment accounts became marital property.

---

1. *Friend-Novorska v. Novorska*, 131 N.C. App. 508, 511, 507 S.E.2d 900, 902 (1998).

LANGSTON v. RICHARDSON

[206 N.C. App. 216 (2010)]

N.C. Gen. Stat. § 50-20 defines separate property to include "all real and personal property acquired by a spouse before marriage[.]" N.C. Gen. Stat. § 50-20(b)(2) (2009). "However, property acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance." *Id.*

We addressed a similar issue in *Manes v. Harrison-Manes*, 79 N.C. App. 170, 338 S.E.2d 815 (1986). Plaintiff and defendant in *Manes* were married in 1979. *Id.* at 170, 338 S.E.2d at 815. Plaintiff then acquired separate property (by inheritance) which he deposited into a bank account in his sole name. *Id.* Plaintiff subsequently changed the bank account to a joint account by adding defendant's name. *Id.* at 170, 338 S.E.2d at 816. In an action for equitable distribution, the trial court concluded that the account remained the separate property of plaintiff, and defendant appealed. *Id.* at 171, 338 S.E.2d at 816. On appeal, this Court held that the trial court did not err in its disposition of the bank account.

> Although the plaintiff added defendant's name to the bank account . . ., the record discloses no evidence of any intention that the funds would not remain plaintiff's separate property. The deposit of funds into a joint account, standing alone, is not sufficient evidence to show a gift or an intent to convert the funds from separate property to marital property.

*Id.* at 172, 338 S.E.2d at 816-17.

We revisited the issue of joint accounts in *Friend-Novorska v. Novorska*, 131 N.C. App. 508, 507 S.E.2d 900 (1998). We there stated,

> The plain language of the [equitable distribution] statute requires that in order to classify a joint account created by the deposit of separate funds as marital property, the spouse claiming such a classification must demonstrate by a preponderance of the evidence that the exchange of separate property was accompanied by: (1) an *intention* that the account be marital property; and (2) that such intention was *expressly stated in the conveyance.*

*Id.* at 511, 507 S.E.2d at 902. The Court recognized that "we have not found an 'express statement' of an intent to create marital property in any of our reported cases involving personal property and the creation of joint accounts." *Id.*

Here, Defendant attempts to distinguish these precedents by arguing that Plaintiff clearly intended to make a gift of the accounts to Defendant. Defendant essentially raises the same arguments that were considered, and rejected, by this Court in *Friend-Novorska*. In that case, the wife contended that the accounts were properly classified as marital property because her husband had stated that at least part of the property in controversy would be used "for the marriage." *Id.* at 512, 507 S.E.2d at 903. We rejected this argument for three reasons:

> First, defendant's statement is not an express statement of intention that the IDS funds were to be the property of the marital estate. . . . Second, plaintiff was not able to offer evidence of any express statement by defendant that the IDS funds would be marital property. Third, the statement in question was made about a year prior to defendant's exchanging his separate funds for the IDS account. Due to the passage of time, we do not believe the statement was one made "in the conveyance."

*Id.*

In the present case, Defendant points to no expressly stated intention of the Plaintiff to convert the investment accounts into marital property. Rather, Defendant argues that Plaintiff's statement that he was putting his wife's name on the joint accounts in order to take care of her in case anything happened to him was "an express statement demonstrating an intention to directly benefit her and indirectly benefit the marital estate." Such a statement is not adequate to transform separate property into marital property. *See id.* at 511, 507 S.E.2d at 902. Indeed, Plaintiff's statement was neither an explicit statement of intention to create marital property nor an express statement in any conveyance. I would therefore hold that the trial court erred in concluding that the joint accounts were entirely marital property.

## II

Plaintiff next argues that the trial court erred in ordering Plaintiff to pay the equity line debt. I agree.

N.C. Gen. Stat. § 50-20 authorizes the trial court to distribute only marital and divisible property. N.C. Gen. Stat. § 50-20(a) (2009). "Separate property is not subject to equitable distribution." *Caudill v. Caudill*, 131 N.C. App. 854, 855, 509 S.E.2d 246, 248 (1998). "Debts, as well as assets, must be classified as marital or separate property." *Fox v. Fox*, 114 N.C. App. 125, 134, 441 S.E.2d 613, 618 (1994).

N.C. Gen. Stat. § 50-20(c) allows the trial court to make an unequal distribution of the marital and divisible property "[i]f the court determines that an equal division is not equitable[.]" N.C. Gen. Stat. § 50-20(c) (2009). One factor the court is allowed to consider in making an unequal distribution is "[t]he income, property, and liabilities of each party at the time the division of property is to become effective." *Id.* Thus, although the trial court may consider the parties' separate property in its scheme of equitable distribution, the trial court is empowered to divide and distribute only the marital and divisible property. *Id.*

In the present case, the trial court found that "[t]he Wachovia Bank equity line account totaled $57,419.78 on the date of separation. Of that amount, $51,000.00 was the Defendant's separate debt . . . ." Notwithstanding, the trial court directed Plaintiff to pay that debt, noting that "[Plaintiff's] obligation to do so was considered as a major factor for an unequal distribution." Plaintiff now argues that the trial court exceeded its authority under the statute in distributing to him what is in effect Defendant's separate property.

In support of the order, Defendant adverts to the unequal distribution of the marital property. Defendant points, however, to no statutory provision authorizing the trial court to distribute one party's separate property to the other. Indeed, the statute contains no such provision. *See* N.C. Gen. Stat. § 50-20 (2009).

I conclude from this that the trial court erred in distributing to Plaintiff Defendant's $51,000 debt.