McGEE, Chief Judge.
Mark Charles ("Plaintiff") and Norma Graciano[1] ("Defendant") were married on 25 January 1992, and had one child, born in 1994. Plaintiff became an active duty member of the United States Army on 14 October 1993. Plaintiff and Defendant separated on 15 June 2008, and Plaintiff filed a complaint for absolute divorce on 19 June 2009. Defendant answered on 20 August 2009 and filed counterclaims for absolute divorce, post-separation support, alimony, equitable distribution, attorney's fees, costs, and a request for an injunction preventing Plaintiff from depleting the marital estate. The trial court granted divorce by judgment entered 14 September 2009. The trial court held a hearing on 18 March 2010, on post-separation support and interim equitable distribution, and a discovery conference. The trial court entered an order from that hearing on 10 September 2010, wherein Defendant was found to be a dependent spouse and Plaintiff a supporting spouse. The trial court ordered Plaintiff to pay $1,500.00 per month in post-separation support and to comply with certain discovery requests. Plaintiff re-married on 29 April 2011. After approximately four months of marriage to his new wife, Deborah Charles ("Ms.Charles"), Plaintiff retired from active military service on 31 August 2011.
Plaintiff failed to abide by the terms of the 10 September 2010 order, and a show cause order was entered on 31 January 2013 requiring Plaintiff to appear and "show cause why he should not be held in wilful contempt for failure to abide by [the] prior orders regarding complying with discovery" and his post-separation support obligations. The trial court held a hearing on 15 April 2013, and found Plaintiff in willful contempt for "failure to pay post [-]separation support ... and for failure to make Defendant the primary former spouse beneficiary of the military Survivor Benefit Plan (SBP) in order to preserve [Defendant's] rights to her share of Plaintiff's military pension." The trial court found that "[d]uring the course of this litigation Plaintiff has had four different attorneys and he wilfully failed to comply with discovery requirements and he failed to provide necessary documents for the proceedings which unnecessarily prolonged these matters." The trial court also awarded Defendant a greater share of Plaintiff's military pension as a sanction for Plaintiff's multiple violations of court orders.
The trial court also determined at the 15 April 2013 hearing that Plaintiff was at least $35,000.00 in arrears in his post-separation support obligations. The trial court ordered Plaintiff jailed for contempt of court "and ordered him to post at least a $35,000.00 cash bond payable to Defendant as well as ordering him to comply with all prior discovery requests." The trial court, on its own motion, entered an order on 24 July 2013, ordering Plaintiff's immediate arrest after learning that Plaintiff was back in North Carolina from overseas employment. Plaintiff was arrested and placed in the Cumberland County Detention Center with a $50,000.00 cash bond, and was again ordered to comply with all prior court orders. An amended order was entered on 20 August 2013 reducing the cash bond to $17,500.00. Plaintiff posted bond and was released.
This matter came on again for hearing on 22-24 April 2014. At that time, Plaintiff was still in arrears on his post-separation support, had still failed to designate Defendant as the primary former spouse beneficiary of his Survivor Benefit Plan ("SBP"), and had failed to pay Defendant her designated share of his military retirement pay. After again noting that Plaintiff had continually failed to comply with its prior orders, the trial court made a number of findings of fact related to equitable distribution. By order and judgment entered 5 September 2014, the trial court ordered, inter alia,that Defendant (1) be awarded certain monies from bank accounts with Wells Fargo; (2) that fifty percent of Plaintiff's military retirement pay be awarded to Defendant until certain conditions were met and then that amount would be reduced to forty-two percent; (3) that $12,285.00 was Defendant's separate property from a personal injury award; (4) that Plaintiff pay post-separation support and military pension arrears; (5) that Plaintiff pay alimony; and (6) that Plaintiff "make the necessary election in a timely manner to effectuate the SBP coverage for the Defendant" and execute the necessary paperwork to elect Defendant as the former spouse beneficiary of the SBP. Plaintiff appeals.
I.
In Plaintiff's first argument, he contends that the trial court "erred in awarding [Defendant] more than her statutory share of [his] military retirement pay." We disagree.
Plaintiff argues that, pursuant to N.C. Gen.Stat. § 50-20.1(d), Defendant's share of his retirement pay should be 34.929% and, therefore, the trial court committed reversible error in awarding Defendant fifty percent. The trial court recognized that 34.929% was Plaintiff's share pursuant to N.C. Gen.Stat. § 50-20.1 ; however, the trial court awarded Defendant an amount above 34.929% as a sanction for "Plaintiff's continued blatant disregard for [the trial court's] orders, failure to comply with discovery, and [the trial court] having duly warned Plaintiff in prior orders it would sanction Plaintiff for his noncompliance along with Plaintiff's purposeful tactics used to delay the [ ] proceedings[.]"
Plaintiff does not argue that the trial court erred in ordering him to pay fifty percent of his retirement to Defendant as a sanction. Because Plaintiff failed to make this argument on appeal, he has abandoned it. SeeN.C. R.App. P. 28(b)(6) (2015) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."); In re Parkdale Mills,--- N.C.App. ----, ----, 770 S.E.2d 152, ---- (2015).
II.
In Plaintiff's second argument, he contends that "the trial court erred in awarding [Defendant] the [SBP] annuity in violation of the United States Code." We disagree.
Title 10 of the United States Code, Subtitle A, Part II, Chapter 73, Subchapter II provides the rules and requirements for SBPs. Plaintiff makes the following two arguments in support of his contention that the trial court erred in ordering him to designate Defendant as the sole beneficiary of his SBP: (1) because Plaintiff married Ms. Charles on 29 April 2011, she automatically became the beneficiary of the SBP when Plaintiff retired from the military on 31 August 2011, and the trial court had no authority to replace her as beneficiary; and (2) more than one year had passed since Plaintiff was first ordered, on 15 April 2013, to designate Defendant as the SBP beneficiary and, therefore, Defendant had lost her opportunity for designation as the SBP beneficiary.
Plaintiff fails to support his arguments with sufficient factual and legal support. Plaintiff cites 10 U.S.C. § 1448(a) and 10 U.S.C. § 1450(f)(3)(c), respectively, for arguments (1) and (2), without quoting from the statutes, analyzing them, or arguing their application to the facts before us. These are the only two citations in support of Plaintiff's arguments. Merely citing to statutes without discussing those statutes and applying the facts of the case to the statutes and related precedent does not suffice. Plaintiff's one paragraph "arguments" in support of his contentions fail to satisfy the North Carolina Rules of Appellate Procedure, and constitute abandonment of his arguments. SeeN.C. R.App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."); In re Parkdale Mills,---N.C.App.at ----, 770 S.E.2d at ----.
In addition, on appeal, Plaintiff's attorney, who also represented Plaintiff at the equitable distribution hearing, did not make these arguments at trial. In fact, Plaintiff's attorney acknowledged that a court order compelling Plaintiff to designate Defendant as the beneficiary of the SBP would serve to override any objection Ms. Charles might have to being removed as the beneficiary-assuming Plaintiff or Defendant took the necessary subsequent steps and the Defense Finance and Accounting Service ("DFAS")[2] made the required changes. Plaintiff's attorney argued at the 22-24 April 2014 hearing that Plaintiff hadcomplied with the 15 April 2013 order and had sent all required materials to DFAS, but that DFAS simply had not yet acted. Because Plaintiff did not make this argument at the 22-24 April 2014 hearing, he cannot now make it for the first time on appeal. N.C. R.App. P. 10(a)(1) (2015); Floyd v. Executive Personnel Grp.,194 N.C.App. 322, 329, 669 S.E.2d 822, 828 (2008).
Assuming arguendoPlaintiff had not abandoned this argument, it would still fail. First, this Court has held that a trial court can order a serviceperson to elect a former spouse as beneficiary of an SBP even though that election would serve to disenfranchise the serviceperson's current spouse. In Rockwell v. Rockwell,77 N.C.App. 381, 335 S.E.2d 200 (1985), the husband consented in a separation agreement to maintain his SBP for his then wife, even in the event of divorce. However, "[o]n the same day that this consent order was signed [6 August 1977], plaintiff obtained a judgment of absolute divorce. In December 1978, plaintiff remarried and subsequently designated his new wife as beneficiary of his [SBP] ." Id.at 382, 335 S.E.2d at 201. This Court held "that under applicable North Carolina law, the separation agreement and consent decree constitute a voluntary agreement in writing to make the election." Id.at 385, 335 S.E.2d 200, 335 S.E.2d at 203. We reversed and remanded to the trial court to issue an order requiring the husband to designate his ex-wife as the former spouse beneficiary of the SBP .[3] Id.This, of course, served to disenfranchise the husband's then current wife from whatever interest she may have had in the SBP.
Plaintiff fails to direct us to any authority indicating that the trial court was without authority to order Plaintiff to elect Defendant as the beneficiary of the SBP, even if that election interfered with whatever interest Ms. Charles might have had in the SBP, and we find none. 10 U.S.C. § 1448(b)(2) states in relevant part:
(A) General rule.-A person [ ("serviceperson") ] who has a former spouse upon becoming eligible to participate in the [SBP] may elect to provide an annuity to that former spouse.
(B) Effect of former spouse election on spouse or dependent child.-In the case of a [serviceperson] with a spouse ..., such an election prevents payment of an annuity to that spouse[.]
10 U.S.C. § 1448(b)(2) (2014). This "election" by the serviceperson in 10 U.S.C. § 1448(b)(2)(A) may be pursuant to a court order. 10 U.S.C. § 1450(f)(3)(B)(ii) ; 10 U.S.C. § 1450(f)(4) ; 10 U.S.C. § 1448(b)(5)(A). When election of a former spouse is mandated by court order, the serviceperson, after making such election, "may not change that election" unless the serviceperson obtains a new court order modifying the previous order and certain other conditions are met. 10 U.S.C. § 1450(f)(2)(A)(i) and (ii). Plaintiff himself testified at the 22-24 April 2014 hearing that he realized he had "an obligation to provide a survivor benefit for" Defendant, and that he was willing to do what was needed to effectuate the designation of Defendant as beneficiary.
If a serviceperson violates a court order requiring designation of the former spouse as beneficiary of an SBP, the serviceperson will be deemed to have made the election if the former spouse sends a written request and a copy of the relevant court order to the proper authority. 10 U.S.C. § 1450(f)(3)(A)(i) and (ii). The former spouse has one year from the date of entry of the relevant court order within which to comply with 10 U.S.C. § 1450(f)(3)(A). 10 U.S.C. § 1450(f)(3)(C). The fact that Plaintiff was married to Ms. Charles at the time he became eligible to participate in the SBP program does not prevent the trial court from ordering Plaintiff to comply with its prior orders and elect Defendant as the former spouse beneficiary of the SBP. Plaintiff's attorney stated as much at the hearing:
When [Plaintiff] retired the only way [Ms.] Charles ... could not be a survivor beneficiary is with her signature. [Ms. Charles] had to waive it. She didn't. He's stuck with it until you entered an order for deemed election.That was presented to DFAS, and DFAS has not yet acted on it. (Emphasis added).
Plaintiff's argument that Defendant lost her ability to obtain a "deemed election" pursuant to 10 U.S.C. § 1450(f)(3) also fails. As illustrated above, Defendant has one year from the entry of an order requiring Plaintiff to elect her as beneficiary of the SBP to force a "deemed election" should Plaintiff, once again, refuse to comply with the court order demanding he do so.[4] 10 U.S.C. § 1450(f)(3)(C). The trial court once again ordered Plaintiff to elect Defendant as beneficiary by order entered 5 September 2014. Defendant has one year from that date to obtain a "deemed election" pursuant to 10 U.S.C. § 1450(f)(3)(A). 10 U.S.C. § 1450(f)(3)(C). The fact that the trial court entered prior orders, over a year ago, requiring Plaintiff to elect Defendant as beneficiary, which Plaintiff apparently defied, does nothing to affect the validity of the 5 September 2014 order. Nor does it relieve Plaintiff of the obligation to elect Defendant as the beneficiary as required by the 5 September 2014 order. The trial court may, of course, hold Plaintiff in contempt should he once again fail to effectuate the ordered election. This argument is without merit.
III.
In Plaintiff's third argument, he contends that the trial court erred in "distributing the [SBP] to [Defendant] without any quantification or valuation of the asset." We disagree.
At trial, Plaintiff's attorney indicated that the SBP was not part of the equitable distribution. He never requested that the SBP be valued, nor objected to any failure of the trial court to value it. Because Plaintiff failed to make this argument to the trial court, it is abandoned. N.C. R.App. P. 10(a)(1) ; Floyd,194 N.C.App. at 329, 669 S.E.2d at 828. In addition, Plaintiff cites to a single authority, Seifert v. Seifert,82 N.C.App. 329, 346 S.E.2d 504 (1986), in his one-page argument for the proposition that: "In an equitable distribution, the trial court is required to identify, value, and distribute the marital property." Plaintiff makes no argument attempting to apply Seifertto the facts of the present case, nor does he cite any authority to show that the SBP is marital property that needs to be valued in the same way as the retirement benefits at issue in Seifert.In fact, Plaintiff, as indicated in his brief, apparently doubted that the SBP constituted marital property, stating: "In this case, the [SBP] even if, arguably, acquired during the course of the marriage and prior to separation, was never valued."
We are not going to make Plaintiff's arguments for him, nor will we conduct an investigation for Plaintiff to determine how the trial court should treat the SBP if it was not marital property, or "acquired during the course of the marriage and prior to separation ." Different jurisdictions have treated SBPs in varying ways related to equitable distribution, and Plaintiff does not make any argument concerning how his SBP should be treated in North Carolina. Because Plaintiff failed to make any attempt to demonstrate how Plaintiff's SBP should be treated, whether within or outside of equitable distribution, he has abandoned his third argument on appeal. SeeN.C. R.App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."); In re Parkdale Mills,---N.C.App.at ----, 770 S.E.2d at ----.
IV.
In Plaintiff's fourth argument, he contends "the trial court erred in awarding [Defendant] post[-]separation support in the amount of eighteen times more than what the court found to be her reasonable needs over her own income." We disagree.
Equitable distribution is vested in the discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. Only a finding that the judgment was unsupported by reason and could not have been a result of competent inquiry, or a finding that the trial judge failed to comply with the statute, N.C.G.S. § 50-20(c) (1987), will establish an abuse of discretion.
Wiencek-Adams v. Adams,331 N.C. 688, 691-92, 417 S.E.2d 449, 451 (1992) (citations omitted). " 'Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.' " Langston v. Richardson,206 N.C.App. 216, 219, 696 S.E.2d 867, 870 (2010) (citation omitted). N.C. Gen.Stat. § 50-16.2A states:
(b) In ordering postseparation support, the court shall base its award on the financial needs of the parties, considering the parties' accustomed standard of living, the present employment income and other recurring earnings of each party from any source, their income-earning abilities, the separate and marital debt service obligations, those expenses reasonably necessary to support each of the parties, and each party's respective legal obligations to support any other persons.
(c_ Except when subsection (d) of this section applies, a dependent spouse is entitled to an award of postseparation support if, based on consideration of the factors specified in subsection (b) of this section, the court finds that the resources of the dependent spouse are not adequate to meet his or her reasonable needs and the supporting spouse has the ability to pay.
N.C. Gen.Stat. § 50-16.2A (2013).
In its 5 September 2014 order and judgment, the trial court made the following relevant undisputed findings of fact:
14. At the April 15, 2013 hearing the [c]ourt also found that Plaintiff was at least $35,000.00 (thirty five thousand dollars) in post separation support arrears. The [c]ourt ordered Plaintiff jailed and ordered him to post at least a $35,000.00 cash bond payable to Defendant as well as ordering him to comply with all prior discovery requests.
....
17. As of this hearing (April 22-24, 2014) Plaintiff is still in arrears on his PSS obligation to Defendant[.]
18. The [c]ourt notes that Plaintiff has repeatedly failed to comply with the orders of the [c]ourt. That the PSS monies paid by Plaintiff to Defendant have been paid mainly as a result of the garnishment order in place, but that this garnishment of his military retiree pay does not cover the full amount of monthly PSS owed by Plaintiff to Defendant, and as a result of those failures to abide by this [c]ourt's prior orders Plaintiff was incarcerated for wilful contempt.
....
30C. The difference that [Plaintiff] has received of the marital estate more than Defendant is $20,143.00 which represents the difference between $56,993. [00] and $36,850.00.
30D. That the [c]ourt on August 14, 2014 ordered the $20,143.00 difference to be applied toward Plaintiff's Post Separation Support arrears owed to Defendant.
31. After July 2009 Plaintiff quit paying [Defendant] any support until ordered to do so by this [c]ourt in the form of post separation support with the exception of the $5,500.00 paid to Defendant in December 2010 which is addressed further in this order/judgment. That these court ordered post separation support payments were incomplete and partially garnished from [Plaintiff's] military retiree pay in that the DFAS would only garnish a certain percentage of the $1500.00 ongoing PSS due to Defendant.
32. That during the major course of the marriage Defendant did not work and Plaintiff was on active duty with the U.S. Army as an enlisted soldier. That during the course of the marriage the parties either rented housing or lived in government housing, and like most military families they moved to a new duty station every three to four years as [ ] Plaintiff's military career progressed.
33. On the date the parties separated, Plaintiff had obtained the rank of E7 and he eventually retired at the rank of E8 in August 2011. During the course of his military service he changed his military occupational speciality from Infantry to Special Forces.
34. That during the marriage [ ] Defendant had worked outside the home at different times at low wage jobs. That she was financially dependent during the marriage upon Plaintiff and has continued to be financially dependent upon [Plaintiff] since the date of separation to present. In December 2007 she completed her B .A. Degree in Accounting at Fayetteville State University located in Fayetteville, NC. She had a year and a half of college prior to marrying Plaintiff.
35. In 2009 Defendant began working for State Street Bank in Sacramento California where she was earning $38,000.00 per year until she was laid off in November 2012 at which time her earnings had increased to $44,000.00 per year. That upon being laid off from her job she was receiving unemployment checks from December 2012 until December 2013 and received a total of $19,888.00 for that time period in unemployment benefits. That after December 2013 she no longer received any unemployment benefits. In addition, during this time frame she was receiving only a portion of the total monthly PSS payments from Plaintiff. The [c]ourt notes that California has a higher cost of living, but that her friends and family live in California, who assist her from time to time.
36. That since [Defendant] was laid off from her job she has not found stable employment, and has had to live with friends and family and borrow money from her family when necessary. That [Defendant] moved from rural California to Huntington Beach in Southern California. That she currently resides with friends and in a sense is homeless and that she moves periodically so that she does not become an imposition to friends and family.
37. That [ ] Defendant has been unable to find work in her field and she has economic needs in excess of $4,000.00 per month.
38. That Plaintiff earned $58,482.00 in 2008 per his federal and state income tax returns. In 2011 Plaintiff received his military pension beginning in September 2011 and in addition after he retired from the U.S. Army he began private contract work for Triple Canopy Inc as a supervisor providing personal protection for the Ambassador in Iraq earning $100,893.00 from Triple Canopy in 2011, said sum not including his military retirement income.
39. In 2012 Plaintiff earned $174,630.00 from Triple Canopy Inc not including his military retiree income.
40. In 2013 Plaintiff earned $137,000.00 from Triple Canopy Inc not including his military retiree income.
41. That in 2014 Plaintiff earned year to date income from January 1, 2014 to present of approximately $37,300.00 (Defendant's Exhibit 16) from Triple Canopy Inc. not including his military retiree pay.
42. That Plaintiff's federal and state tax liability has only been ten percent or less of his gross earnings in 2008, 2010, 2011 and 2012.
43. That at the parties['] date of separation and years subsequent to 2010 Plaintiff has had the present ability and still does have the ability to pay the post separation support ordered in March 2010 with said PSS payments beginning April 1, 2010 and to provide to Defendant her portion of the military pension as ordered by this [c]ourt.
44. That during the marriage Plaintiff was the supporting spouse and Defendant was a dependent spouse as defined by NCGS 50-16.1A et seq.
45. From April 2010 through March 2014 Plaintiff was to have paid [ ] Defendant $72,000.00 in post separation support and as of March 2014 he has paid $42,584.69 comprised of partial payments made by garnishment and by the contempt purge payment of $17,500.00 paid in September 2013 leaving a post separation arrears owed to Defendant as of the end of March 2014 in the amount of $29,415.00 before other credits and calculations as follows:
Post Separation Support owed by Plaintiff to Defendant as of March 2014: $29,415.00
December 2010 Payment to Defendant from Plaintiff: $5,500.00
Add April 2014 Partial PSS Pmt to Defendant $770.00 [ =] $6270.00
Subtract Pension owed April 2, 2014 to Defendant $1,082.50 [=] $5187.50
Subtract April 2014 PSS still owed to Defendant $730.00 [=] $4457.50
Credit to be subtracted from $29,415.00 [-] $4457.50 Then Minus the ED Credit of $20,143.00 [= $4814.50]
Post Separation Support Arrears owed as of April 1, 2014 after determining the final credits and debits [=] $4814.50[5]
46. On June 22, 2009 Plaintiff sent Defendant an email stating he was cutting off payments and that he took $21,000.00 from the Wells Fargo Account. In the email Plaintiff accuses Defendant of "stealing from him" and he further states "you are in no position to fight me." Plaintiff accused Defendant of excessive spending and noted the transfer of $25,000.00 to an account citing $12,000.00 spent in a mall in April 2008. That Plaintiff basically complained that [Defendant] was a spend thrift and he had lived on $1,300.00 a month while deployed.
....
51. That Plaintiff paid no child support monies after July 2009.
These findings of fact in the 5 September 2014 order and judgment include the $1,500.00 per month PSS amount, and amounts Plaintiff has been in arrears based upon that $1,500.00 figure. Plaintiff has not challenged these findings of fact. Most significantly, finding of fact 45 calculated the total amount of PSS Plaintiff still owed as of 1 April 2014, to be $4,814.50. As Plaintiff does not challenge this finding of fact, it is binding on this Court. Langston,206 N.C.App. at 219, 696 S.E.2d at 870. Because Plaintiff has not challenged the total amount of PSS arrearages owed, this amount stands. Whether the trial court made errors in calculating the monthly PSS Plaintiff owed Defendant in its 10 September 2010 order is moot, as the amount of PSS arrearages Plaintiff owes is not in dispute, and PSS is no longer ongoing. In the same 5 September 2014 order and judgment, Plaintiff was ordered to begin paying Defendant alimony in the amount of $1,000.00 monthly, with certain conditions. Plaintiff has not challenged this alimony award, which replaces Plaintiff's PSS obligation. This argument is without merit.
V.
In Plaintiff's fifth argument, he contends "the trial court erred in finding of fact No. 27 that [Plaintiff] received $21,000 from a joint account where such finding is contrary to the evidence." We disagree.
"A trial court's findings of fact in an equitable distribution case are conclusive if supported by any competent evidence." Fitzgerald v. Fitzgerald,161 N.C.App. 414, 419, 588 S.E.2d 517, 521 (2003) (citation omitted). The trial court found, and Plaintiff acknowledges, that the Wells Fargo joint account in question "had a balance of $42,567.00" on the date of separation. It is also undisputed that Plaintiff continued to deposit money in this account for more than one year following separation, and that Plaintiff withdrew $21,000.00 from the account in July 2009. Plaintiff argues that the trial court "ignored the contributions made by [Plaintiff] after the date of separation other than to say that the 'monies were for child support.' " Plaintiff argues that this finding "was made in the face of evidence from [Defendant] that the funds deposited were for her support as well as their son." What the trial court actually found was that "Plaintiff stated these monies were child support." Plaintiff does not contest that he admitted that the monies were for child support, so this finding is binding on appeal. Langston,206 N.C.App. at 219, 696 S.E.2d at 870. There is competent evidence to support the trial court's finding that the $42,567.00 value of this account at the date of separation was the appropriate value to divide between Plaintiff and Defendant in equitable distribution. There was competent evidence that the additional post-separation monies deposited into the account were for child support, and therefore did not serve to diminish Defendant's share of the $42,567.00 marital property.
Absent any citation to legal authority, Plaintiff argues:
Regardless of the purpose of the postseparation deposits, the funds withdrawn cannot be said to have been the funds existing on the date of separation without considering the postseparation additions made to the account. In other words, the funds withdrawn in July, 2009 may well have been funds deposited by [Plaintiff] after separation, and not funds existing on the date of separation.
Plaintiff is apparently arguing that, because there is no method to determine if the exact funds deposited by him post-separation were the same funds Defendant used for support and were not-at least in part-the funds Plaintiff withdrew in July 2009, the trial court had no way of determining whether the funds remaining were marital or separate. Of course, all of these funds existed solely on paper while they were being held by Wells Fargo, and were not capable of physical division. Plaintiff provides no legal authority for this argument, and we will not undertake to make Plaintiff's argument for him. SeeN.C.R.App. P. 28(b)(6) ; Viar v. N.C. Dep't of Transp.,359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). This argument is without merit.
VI.
In Plaintiff's final argument, he contends "the trial court erred in finding of fact No. 28 that [Defendant] had a $12,285 separate property interest in the parties' joint Wells Fargo account on the date of their separation without requiring [Defendant] to trace said funds." We agree.
The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary.
Pegg v. Jones,187 N.C.App. 355, 358, 653 S.E.2d 229, 231 (2007) (citations and quotation marks omitted).
It is presumed that all property acquired after the date of marriage and before the date of separation is marital property. N.C. Gen.Stat. § 50-20(b)(1).
The party claiming the property to be marital must meet [his] burden by showing by the preponderance of the evidence that the property: (1) was "acquired by either spouse or both spouses"; and (2) was acquired "during the course of the marriage"; and (3) was acquired "before the date of the separation of the parties"; and (4) is "presently owned." N.C.G.S. § 50-20(b)(1). If this burden is met and a party claims the property to be separate, that party has the burden of showing the property is separate. This burden is met by showing by the preponderance of the evidence that the property was ... "acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage" (third-party gift provision)[.] N.C.G.S. § 50-20(b)(2).
Atkins v. Atkins,102 N.C.App. 199, 206, 401 S.E.2d 784, 787-88 (1991).
It is undisputed that Defendant obtained the personal injury award during her marriage to Plaintiff and before separation. It was therefore Defendant's burden to show by the preponderance of the evidence that the disputed $12,285.00 was her separate property. Assuming that the personal injury award constituted separate property when Defendant received it, Defendant must still trace back to their source the funds she now claims are what remains of that award. This is especially true because the $12,285.00 that Defendant claims is her separate property was comingled with marital funds.
Commingling of separate property with marital property, occurring during the marriage and before the date of separation, does not necessarily transmute separate property into marital property. Transmutation would occur, however, if the party claiming the property to be [her] separate property is unable to trace the initial deposit into its form at the date of separation.
Fountain v. Fountain,148 N.C.App. 329, 333, 559 S.E.2d 25, 29 (2002) (citations omitted). The trial court made the following challenged finding of fact:
28. On the date of separation the parties owned a Certificate of Deposit (CD) with Wells Fargo Bank in an account ending in the last four digits of -5289. The date of separation balance was $25,097.00. However, of this total, approximately $12,285.00 was from a personal injury settlement received by Defendant for her injuries in an auto accident that occurred in 1996. That [ ] Defendant deposited the $12,285.00 in this account to combine with the parties' other monies in order to purchase the $25,097.00 CD. That the testimony that these personal injury monies were her separate property was uncontroverted and the [c]ourt finds that the personal injury funds [are] her separate property. Therefore the court establishes the date of separation value of this account ending in the last four digits of -5289 at $12,812.00 and finds Defendant should be awarded the $12,812.00
At the hearing Defendant testified as follows:
[Defendant's counsel]. And you've indicated on Schedule B that you took out $12,285 from your personal injury proceeds.
[Defendant]. Yes.
[Defendant's counsel]. And did you combine that with other monies to purchase the CD?
[Defendant]. Yes.
[Defendant's counsel]. And how much was the CD purchased for?
[Defendant]. $25,000.....
[Plaintiff's counsel]. When you received the personal injury money did you make a copy of the check that you received?
[Defendant]. No, I did not.
[Plaintiff's counsel]. Did you bring a bank statement where you initially deposited it into Wells Fargo?
[Defendant]. No, I did not.
[Plaintiff's counsel]. Did you bring any transitional statements from 1996 [when Defendant received the personal injury award] to 2008, showing that that money was still there?
[Defendant]. No.
Though Plaintiff may not have controverted that the personal injury award was Defendant's separate property, it was still Defendant's burden to trace the $12,285.00 of the CD funds that she claimed as her personal property back to the 1996 personal injury award. Fountain,148 N.C.App. at 333, 559 S.E.2d at 29. Defendant was unable to do so. There was not sufficient competent evidence to support the trial court's finding that the contested $12,285.00 was Defendant's separate property. The presumption that all the monies used to fund the CD were marital property was not rebutted. Therefore, we must remand to the trial court for equitable distribution of the $12,285.00 as marital property.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
Judges GEER and TYSON concur.
Report per Rule 30(e).
Opinion
Appeal by Plaintiff from order and judgment entered 5 September 2014 by Judge George Franks IV in District Court, Cumberland County. Heard in the Court of Appeals 18 May 2015.

Defendant took the last name "Charles" when she married Plaintiff, but legally resumed her maiden name "Graciano" upon the grant of absolute divorce on 14 September 2009.

DFAS is an agency of the Department of Defense responsible for managing military SBPs, among other duties.

We note that in Rockwell, at the time the serviceperson and the former spouse entered into the written agreement, the rules for SBPs did not allow for designation of a former spouse as beneficiary. However, by the time the action was filed, the rules had been changed to allow such an election, and this Court held that the written agreement was binding as between the serviceperson and the former spouse, and that the trial court could order the serviceperson to elect the former spouse as beneficiary pursuant to the amended SBP rules.

It is unclear what, exactly, Plaintiff did in response to the 10 September 2010 order to designate Defendant as the beneficiary of the SBP. Plaintiff's testimony and his attorney's explanations regarding what was done to effectuate the 10 September 2010 order in this regard are inconsistent. However, had Plaintiff complied with the requirements of 10 U.S.C. §§ 1448 and 1450 following entry of the 10 September 2010 order, Defendant should have been made the beneficiary of the SBP by DFAS or the appropriate authority.

"$29,415.00-4457.50-20,143.00 = $4814.50"